# EXHIBIT H

Case 3:02-cv-00333-MRK   Document 47   Filed 10/24/2003   Page 1 of 18

1

```
 1              UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF CONNECTICUT

 3

 4     * * * * * * * * * * *

 5     INTERNATIONAL BRANDS USA, INC.  *      COPY
       and INTERBRANDS, INC.,
 6                                     *

            Plaintiffs
 7                                     *

         VS.                                  Case No.
 8                                     *      302CV333 (JCH)

       OLD ST. ANDREWS LIMITED,
 9                                     *

            Defendant
10     * * * * * * * * * * *

11                                     Westport, CT

12                                     February 7, 2003

13                                     9:12 A.M.

14

15                    - - -

                DEPOSITION OF JULIAN HASWELL
16                    - - -

17     APPEARANCES:

18         FOR THE PLAINTIFFS:

19         LEVETT ROCKWOOD, P.C.
           BY:  MARC J. KURZMAN, ESQ.
20              DORIT HEIMER
                33 Riverside Avenue
21              Westport, CT 06880

22         FOR THE DEFENDANT:

23         FELDMAN & HICKEY, LLC
           BY:  MICHAEL FELDMAN, ESQ.
24              10 Waterside Drive, Suite 303
                Farmington, CT 06032
25
           ALSO PRESENT:  ROLF ANDERSEN


                  CAMPANO & ASSOCIATES
               COURT REPORTING SERVICES
```

2

1           Deposition of JULIAN HASWELL, the
defendant herein, taken on behalf of the plaintiffs
2   herein, for the purpose of discovery and for use as
evidence in this cause, pending in the United States
3   District Court for the District of Connecticut,
pursuant to Notice, before Leslie Correa, Licensed
4   Shorthand Reporter, No. 00358, and a Notary Public
within and for the State of Connecticut, at the law
5   office of Levett Rockwood, P.C., 33 Riverside
Avenue, Westport, Connecticut, on the 7th day of
6   February, 2003 at 9:12 a.m., at which time counsel
appeared as hereinbefore set forth. . .

7

8           S T I P U L A T I O N S

9       IT IS HEREBY STIPULATED AND AGREED TO
by and among counsel for the respective parties
10  hereto that all technicalities as to the proof
of the official character of the authority before
11  whom the deposition is to be taken are waived.

12      IT IS FURTHER STIPULATED AND AGREED TO
by and among counsel for the respective parties
13  hereto that any objections to the sufficiency
of the Notice are waived.

14

15      IT IS FURTHER STIPULATED AND AGREED TO
by and among counsel for the respective parties
hereto that all objections, except as to form,
16  are reserved to the time of trial.

17

18

19

20

21

22

23

24

25

1   Q.      Did you discuss with her the nature of
2   the termination of Old St. Andrews' relationship
3   with International Brands?
4   A.      Yes.
5   Q.      Did Ms. Latter provide to you any
6   information that's not reflected in the documents
7   that you have produced in this matter?
8   A.      No. Just did -- produced the paperwork
9   and did her job.
10  Q.      Do you expect that Ms. Latter is going
11  to be a witness when this matter goes to court?
12  A.      Yes.
13  Q.      And what specific issue do you expect
14  Ms. Latter to testify on?
15          MR. FELDMAN: Objection. I think
16  you are getting into work product.
17          MR. KURZMAN: I am not interested
18  in anything that's come from counsel.
19          MR. FELDMAN: I don't think we have
20  determined what issue she is going to testify on.
21  I think you can ask the question differently, but we
22  are not in a position to know what witnesses are
23  going to testify to what subjects, beyond how we
24  have disclosed it in our preliminary disclosure.
25  Q.      (By Mr. Kurzman) Let me ask you this:

1    A.    Okay.

2    Q.    So is it your testimony, Mr. Haswell,
3 that between 1991 and 1996, Old St. Andrews only had
4 two distributors -- exclusive distributors?

5    A.    That I could find in the records, yes.

6    Q.    And then between 1991 and 2001, 10-year
7 time period, your testimony is that Old St. Andrews
8 only had had three exclusive distributors, is that
9 your testimony?

10   A.    That's what I found.

11   Q.    And your testimony is that if a party
12 didn't have a writing that it had signed and your
13 company had signed, it wasn't an exclusive
14 distributor?

15   A.    Uh-huh.

16   Q.    Yes?

17   A.    Yes.

18   Q.    So if in the course of discovery in
19 this action I contacted the other parties on this
20 list and asked those parties about their
21 relationship with Old St. Andrews, they would say,
22 "We are a customer.  We are not an exclusive
23 distributor"?

24           MR. FELDMAN:  Objection to the
25 form.

1   A.   I can't speak on their behalf.  They
2   would answer it as they see fit.
3   Q.   Let me ask you this:  Do you know
4   whether any of the parties on Exhibit C, other than
5   the ones you identified for me as distributors,
6   regard themselves as distributors of Old St.
7   Andrews' products?
8           MR. FELDMAN:  I'll object to the
9   form.
10  A.   I can't answer the question on their
11  behalf.
12  Q.   You don't know?
13  A.   No.
14  Q.   Do you maintain in your records,
15  Mr. Haswell, separate lists of distributors on the
16  one hand and customers on the other?
17  A.   They are all put in as customers to
18  sell products to.  I don't -- no, I don't.
19  Q.   So if I asked you for your file of
20  exclusive distributors, that's not segregated from
21  your list of customers?
22  A.   They are only by definition of having a
23  dual signed contract is how we would consider them
24  exclusive contracts.
25  Q.   How long have you employed that

1       Q.      Okay. Let me ask you another question.
2 Have you spoken to Connecticut Distributors
3 Incorporated on any other issue relating to Old St.
4 Andrews' products?
5       A.      Personally, no.
6       Q.      You have had your counsel do so?
7       A.      Yes.
8       Q.      Do you know when your counsel spoke to
9 anybody at Connecticut Distributors Incorporated?
10              MR. FELDMAN: I am going to object.
11 You are asking for privileged information. The only
12 way he would know it is from being told by us.
13              MR. KURZMAN: I am not sure that's
14 privileged. I agree with that part, but I am not
15 sure it's privileged.
16              Rather than get into colloquy, I am
17 going to ask that that get marked. We will come
18 back to it.
19      Q.      (By Mr. Kurzman) Have you spoken to
20 anybody at Briscum Barton (Phonetic) regarding Old
21 St. Andrews' products?
22      A.      The name is not familiar.
23              MR. KURZMAN: Why don't we take --
24 let's go off the record for a second.
25              (Whereupon, a recess was taken.)

1   and answer, please.
2                   (Whereupon, the requested portion of
3                   the record was read by the reporter.)
4       Q.      (By Mr. Kurzman)  You want to elaborate
5   on that answer?  What do you mean by "to Rolf
6   Andersen, probably"?
7       A.      He considers it a valuable document.
8       Q.      I didn't use the term valuable.  I said
9   valid.
10              MR. FELDMAN:  Let me object to the
11  form.  Valid meaning authentic?
12      Q.      (By Mr. Kurzman)  Is this an authentic
13  document or do you contest the authenticity of --
14  withdrawn.
15              Do you contest the authenticity of the
16  document I have marked as Plaintiffs' Exhibit D?
17      A.      It's not the same as the one I have on
18  file.
19      Q.      I appreciate that.  Putting that issue
20  aside, when you --
21      A.      Then I would have to say no, I don't
22  recognize it.
23      Q.      Then you contest the authenticity of
24  the document?
25      A.      I don't have one that's the same.

1   1989 typed in it?
2       A.    Correct.
3       Q.    And once again, Mr. Haswell, is it true
4   that at some time in the past, Old St. Andrews
5   appointed International Brands -- sorry.  Old St.
6   Andrews appointed Interbrands, Inc as its exclusive
7   agent for Old St. Andrews' products in the United
8   States?
9             MR. FELDMAN:  I'll object to the
10  form.
11            MR. KURZMAN:  Repeat the question.
12            (Whereupon, the requested portion of
13            the record was read by the reporter.)
14      A.    No, I don't believe this to be a valid
15  contract.
16      Q.    (By Mr. Kurzman)  You are getting -- go
17  ahead.  Finish your answer.
18            MR. FELDMAN:  I think he did.
19      Q.    I am not going to engage in a debate
20  with you over whether it is a valid contract or not.
21  I am asking a purely factual question.
22            My factual question is, Mr. Haswell,
23  whether it's true that effective at some time in the
24  past, effective August 1989, Old St. Andrews Limited
25  appointed Interbrands Incorporated as its exclusive

1  posting with the BATF, he would have refused to do
2  that, wouldn't he have?
3         MR. FELDMAN:  Objection.
4     A.    The answer, as I best understand it --
5         MR. FELDMAN:  He is asking about
6  your father's intent.  Limit your answer to his
7  question.
8     A.    I can't answer it.  I can't speak on
9  his behalf.
10    Q.    That's not the type of guy he was, was
11 he?
12    A.    What was that?
13    Q.    He wouldn't have typed out a letter
14 containing a false statement for posting with the
15 BATF?
16    A.    Why do you consider it to be a false
17 letter?
18    Q.    I am not considering it to be anything.
19 To the contrary, I don't believe it to a false
20 letter.
21        Your testimony is that you don't
22 believe, under Exhibit E, that Interbands, Inc was
23 appointed as the exclusive agent for the sale of Old
24 St. Andrews' products into the United States?
25    A.    No, I don't believe it, yes.

1  remember.
2          Can you explain to me why it's the case
3  that during this, roughly, 12-year period, if my
4  math is correct, Old St. Andrews didn't sell into
5  the United States except through International
6  Brands and the duty free people?
7      A.   Because you cannot sell in the United
8  States without postings in Washington.  Had we
9  chosen to have done that, then maybe.
10     Q.   Tell me why you never chose to have any
11 other party post prices in Washington D.C.?
12     A.   That was a decision made by my father.
13     Q.   And do you know the reason for the
14 decision?
15     A.   I don't.
16     Q.   Did it have anything to do with the
17 facts that your father had appointed International
18 Brands as Old St. Andrews' exclusive distributors in
19 the United States?
20          MR. FELDMAN:  Objection to the
21 form.
22     A.   He had a business relationship with him
23 as a customer.
24     Q.   "Him" being?
25     A.   Rolf Andersen.

1   A.   I asked him for his ongoing interest in
2   the brand.
3   Q.   And his response was?
4   A.   The usual one.
5   Q.   Which was?
6   A.   Being ignored.
7   Q.   Did you send the letter to Mr. Andersen
8   prior to November 21, 2001 indicating that you were
9   contemplating terminating the business relationship
10  between Old St. Andrews and International Brands?
11  A.   By asking him his interests in the
12  brand on an ongoing basis.
13  Q.   So aside from that inquiry, aside from
14  that, had you indicated to Mr. Andersen orally or in
15  writing, prior to November 21, 2001, that you were
16  contemplating terminating the business relationship
17  between Old St. Andrews and International Brands?
18  A.   Not in those words.
19  Q.   Does your letter of November 21, 2001
20  express all of the reasons why you decided to
21  terminate the business relationship between Old St.
22  Andrews and International Brands?
23          MR. FELDMAN:  I am going to object
24  to the form of the question about terminating the
25  business relationship.  What the letter says is that

1  your products," you wouldn't have entered into a
2  relationship as a customer, or distributor, or
3  otherwise with that party until you had formally
4  terminated your relationship with Mr. Andersen and
5  International Brands, isn't that correct?
6                MR. FELDMAN:  I am going to object
7  to the form.  It's hypothetical and speculative.
8       A.      It's hypothetical.
9       Q.      It didn't happen?
10      A.      I didn't offer it to anybody else.
11      Q.      Let's talk about point 1 on your
12 letter, the disappointing sales of Old St. Andrews'
13 products.
14              Was International Brands under a
15 minimum purchase obligation with Old St. Andrews?
16      A.      No.
17      Q.      On what basis did you conclude that the
18 sale of Old St. Andrews had been disappointing?
19      A.      By the figures speaking for themselves.
20      Q.      On that Exhibit --
21      A.      1,200 cases in three years.  You could
22 sell that in Hartford over three years.
23      Q.      Did you investigate that?
24      A.      And quite possibly did.
25      Q.      I didn't hear what you said.

1    A.    I don't know.

2    Q.    Did you ever have a discussion with
3 Mr. Andersen concerning the insurance claim?

4    A.    No.

5    Q.    Did you ever tell Mr. Andersen that you
6 had benefitted from the payment by the insurance
7 company and the duplicative payment by International
8 Brands?

9         MR. FELDMAN:  Objection to the
10 form.

11   Q.    You recall no discussions with
12 Mr. Andersen on the subject?

13   A.    No.

14   Q.    Do you have in the records of Old St.
15 Andrews any documentation concerning the filing of
16 an insurance claim in connection with goods shipped
17 to International Brands?

18   A.    No, I don't.

19   Q.    Have you looked for such documents?

20   A.    We don't keep records over six years on
21 accounts.

22   Q.    What do you do with the records?

23   A.    Destroy them.

24   Q.    Do you know who issued credit insurance
25 policies to Old St. Andrews in the early 1990s?

```
 1   not?
 2       A.     I am.
 3       Q.     You are not aware of any other proposed
 4   contracts or agreements that were issued other than
 5   the ones that we have marked here at your
 6   deposition?
 7       A.     No.  The ones that were originally sent
 8   in 1989 and 1992.
 9       Q.     The fifth affirmative defense on the
10   next page, page 7, states in substance that
11   International Brands failed to disclose or obtain
12   approval from Old St. Andrews for marketing and
13   advertising.
14              Tell me when you are done reading it.
15       A.     Okay.
16       Q.     Is it your position, Mr. Haswell, that
17   International Brands was required to obtain Old St.
18   Andrews' approval before conducting marketing or
19   advertising of Old St. Andrews' products?
20       A.     He didn't discuss with me the projects
21   that he did by himself.
22       Q.     Was Mr. Andersen required to receive
23   Old St. Andrews' approval before marketing or
24   advertising Old St. Andrews' products?
25                     MR. FELDMAN:  I'll object to the
```

1   form.
2   A.   Can you repeat that question?
3       MR. KURZMAN:   Read it back.
4       (Whereupon, the requested portion of
5       the record was read by the reporter.)
6   A.   No.
7   Q.   The sixth affirmative defense you
8   indicate that plaintiffs' are barred from claiming
9   that certain goods were nonconforming.
10       I take it that what we are talking
11  about is the goods referenced in Invoices 7/15 and
12  7/16, correct?
13  A.   Yes.
14  Q.   And would it be fair to say that that
15  objection does not pertain to invoice 7/15 because
16  you have acknowledged that International Brands is
17  entitled to a credit for those returned goods?
18       MR. FELDMAN:   I'll object to the
19  form..
20  A.   They were returned because they did not
21  agree with the BATF posting.
22  Q.   When you say "agree," you mean conform
23  with?
24  A.   Conform with, yes.  And out of courtesy
25  and good business, we said we will take them back.

1   to have an understanding.  If you have additional
2   questions to ask, I would rather have you ask them
3   now and try to conclude the deposition.
4           If you think that -- if you are just
5   keeping it open because you think we owe you some
6   documents and you would only reopen it if the new
7   documents would require you to ask more questions,
8   that's one thing.  If you have additional questions,
9   we prefer that you just take care of it now.
10          MR. KURZMAN:  That's fair enough.
11  I am otherwise done based on the materials that have
12  been produced to me so far and the nature of the
13  claims that are in the lawsuit right now.  If the
14  nature of the damages claim changes, the additional
15  documents that are produced suggest we move forward,
16  then I am reserving my right to continue the
17  deposition.
18          MR. FELDMAN:  We reserve our right
19  to object to that, obviously.
20          Thank you for getting us out of here.
21          (Whereupon, the deposition was
22  concluded at 3:50 p.m.)
23          (Exhibits were retained by Attorney
24          Kurzman.)
25

1                    C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT

4    FOR THE DISTRICT OF CONNECTICUT

5        I, LESLIE CORREA, Licensed Shorthand Reporter
and Notary Public within and for the State of
6    Connecticut, duly commissioned and qualified, do
hereby certify that pursuant to Notice, JULIAN
7    HASWELL, the deponent herein, was by me first duly
sworn to testify to the truth, the whole truth and
8    nothing but the truth of his knowledge touching and
concerning the matters in controversy in this case;
9    that he was thereupon carefully examined upon his
oath and his testimony reduced to writing by me; and
10   that the deposition is a true record of the
testimony given by the witness.

11
         I further certify that I am neither attorney or
12   counsel for, nor related to or employed by, any of
the parties to the action in which this deposition
13   is taken, and further that I am not a relative or
employee of any attorney or counsel employed by the
14   parties thereto or financially interested in the
action.

15
         IN WITNESS WHEREOF, I have hereunto set my hand
16   this 23rd day of February, 2003, at Norwalk,
Connecticut.

17

18

19                                  _____
                                    Leslie Correa, LSR
20   My Commission Expires:         License No. 00358
     August 31, 2007                Notary Public
21                                  State of CT

22

23

24

25