*Exhibit 9 to Declaration of Marc J. Kurzman*
*dated October 30, 2003*


*PART 2 OF 7*

1      Q.      So you don't believe that the content

2  of Exhibit E is accurate?

3      A.      The content is accurate.

4      Q.      The content is accurate?

5      A.      Exhibit D is not.

6      Q.      I am talking about Exhibit E.  I

7  haven't spoken to Exhibit D in a while.  Let's put

8  Exhibit D to the side so you don't get confused.

9      A.      I am not confused.

10      Q.      I am confining my questions exclusively

11  to Exhibit E.

12      A.      I am not confused.

13      Q.      Okay.  Is the content of Exhibit E

14  accurate?

15      A.      From the copy in my file, it is

16  accurate.

17      Q.      Mr. Haswell, during the period 1989

18  through November 2001, did Old St. Andrews sell any

19  of its product into the United States through any

20  party other than International Brands and perhaps

21  the duty free people?

22      A.      Not that I can remember.

23      Q.      Can you tell me why that is?

24      A.      That I can't remember?

25      Q.      No.  No.  I understand that you can't

1    remember.

2              Can you explain to me why it's the case

3    that during this, roughly, 12-year period, if my

4    math is correct, Old St. Andrews didn't sell into

5    the United States except through International

6    Brands and the duty free people?

7         A.    Because you cannot sell in the United

8    States without postings in Washington.  Had we

9    chosen to have done that, then maybe.

10        Q.    Tell me why you never chose to have any

11   other party post prices in Washington D.C.?

12        A.    That was a decision made by my father.

13        Q.    And do you know the reason for the

14   decision?

15        A.    I don't.

16        Q.    Did it have anything to do with the

17   facts that your father had appointed International

18   Brands as Old St. Andrews' exclusive distributors in

19   the United States?

20              MR. FELDMAN:  Objection to the

21   form.

22        A.    He had a business relationship with him

23   as a customer.

24        Q.    "Him" being?

25        A.    Rolf Andersen.

1    Q.      And did your father ever tell you that

2  he was precluded from selling into the United States

3  to any other customer other than International

4  Brands?

5    A.      We never discussed it, no.

6    Q.      You took over the company after your

7  father's death in August 2000?

8    A.      Yes.

9    Q.      Between August 2000, when you took over

10  the company, and November 2001 --

11    A.      Yes.

12    Q.      -- did you feel that you were free to

13  sell product into the United States to any customer

14  other than International Brands and perhaps the duty

15  free people?

16    A.      I felt that I had no contractual

17  obligation.

18    Q.      To?

19    A.      International Brands.

20    Q.      And did you ever tell International

21  Brands your position on that issue?

22    A.      I can't remember.  I may have done so,

23  but I can't remember.

24    Q.      So you felt that you had no contractual

25  obligation to International Brands, is that your

1    testimony?

2         A.      Yes.

3         Q.      And conversely, you simply felt that

4    International Brands had no contractual obligation

5    to you?

6         A.      Correct.

7                    MR. KURZMAN:  Mark this.  Never

8    mind.

9         Q.      (By Mr. Kurzman)  If you would turn to

10   tab 16, Mr. Haswell, of the Production Response,

11   that's Plaintiffs' Exhibit A  --

12        A.      Yes.

13        Q.      -- do you recognize the document that

14   has been stamped OSA 149?

15        A.      I do.

16        Q.      Can you tell me what that document is?

17        A.      Sales of our products with customer

18   International Brands from 1994 to 2001.

19        Q.      Who prepared this document marked OSA

20   149?

21        A.      Our bookkeeper.  Simon Messet.

22        Q.      Can you tell me when the document was

23   prepared?

24        A.      No.  It comes off a spread sheet.

25        Q.      This document was prepared from a

1    sell to another customer without courteously telling

2    somebody else that you are not going to sell them

3    your products anymore.

4        Q.        On November 21, 2001, International

5    Brands had the exclusive right to sell your products

6    in the United States, isn't that correct?

7        A.        He was a customer.

8        Q.        With the exclusive right to sell your

9    products in the United States?

10       A.        He did not have a contract.  It was

11   tendered to him.

12       Q.        I am asking you to answer my question.

13       A.        Exclusive by definition, yes.

14       Q.        What do you mean "exclusive by

15   definition"?

16       A.        That I wasn't selling to anybody else.

17       Q.        And you knew it would have been

18   improper to sell to anybody else?

19       A.        No.  It's called good morals and good

20   ethics.

21       Q.        That's all that it was about, just good

22   morals and good ethics?

23       A.        Yes.  It's courteous and reasonable.

24       Q.        Some distributor in California or Ohio

25   had contacted you and said, "I want to start selling

1        Q.        It's based exclusively on what your

2    father told you?

3        A.        Yes.

4        Q.        Do you recall specifically what your

5    father told you on this issue?

6        A.        Only from my memory that it was a case

7    of going into Chapter 11, which is -- if I

8    understand it correctly, in the United States it's

9    whether you can put a company into neutral, I

10   suppose, until it's all resolved and you then carry

11   on again.

12       Q.        But you don't have anything other than

13   what your father told you?

14       A.        No, I don't.  You then asserted to --

15   call it four counterclaims and set offs alleging

16   various items of damage to Old St. Andrews on pages

17   8 and 9 of the pleading.

18       A.        Uh-huh.  Yes.

19       Q.        And hopefully to cut to the heart of

20   the matter, I just want to confirm that all of the

21   damages you are claiming in those four counterclaims

22   are set forth, in one form or another, in the

23   counterclaim summary that was separately provided to

24   me?

25       A.        Sure.

1                    MR. KURZMAN:  Mark this.

2                    (Whereupon, the Defendant's damage

3      analysis was marked as Plaintiffs' Exhibit O for

4      Identification.)

5           Q.     (By Mr. Kurzman)  Mr. Haswell, I have

6      provided to you the document that the court reporter

7      has marked as Exhibit O.

8           A.     Okay.

9           Q.     I am going to ask you to turn to the

10     third page of the document headed "Brief Summary for

11     Counterclaim."

12          A.     Yes.

13          Q.     Do you recognize this third page of

14     Exhibit O?

15          A.     Yes.

16          Q.     Is this a document that you prepared?

17          A.     Yes.

18          Q.     It wasn't prepared by your counsel?  It

19     was prepared by you personally?

20          A.     I believe I produced this.

21          Q.     And this sets forth, subject to

22     discussing the document that I got from Mr. Feldman

23     this morning, this sets forth at least the nature of

24     the damages that you are claiming.  There is nothing

25     else out there other than what is on this page?

1       A.       Products that have been ordered and not

2   taken.

3       Q.       And this is an exclusive list of the

4   damages that you are claiming from International

5   Brands?

6       A.       It's the product list.

7       Q.       I want to make sure that there are no

8   other damages that you are claiming from

9   International Brands other than that which you have

10  set forth on this Brief Summary for Counterclaim.

11      A.       These are the products.  These are the

12  damages for the products that I had orders for and

13  not been fulfilled.

14      Q.       These are the damages that you are

15  referring to in the first counterclaim and set off,

16  and second counterclaim and set off, and third

17  counterclaim and set off, and fourth counterclaim

18  and set off, correct?

19      A.       Yes.

20      Q.       Okay.  The two items that you are

21  claiming are the 750ml Clubhouse Scotch Whiskey and

22  the millennium packs, correct?

23      A.       Yes.

24      Q.       And your counterclaim relàtes to those

25  two products?

1    June 16, 1999 invoice, not the revised invoice that

2    we were discussing a few moments ago, is that

3    correct?

4            A.      You talking about my invoice?

5            Q.      Would be International -- I am sorry.

6    Purchase order.  I misspoke.  The 4,800 cases refer

7    to the June -- it's actually 18, 1999 purchase

8    order, not the revised purchase order that we

9    discussed a few moments ago, correct?

10           A.      Right.

11           Q.      Am I correct?

12           A.      Yes.

13           Q.      Now, I received from Mr. Feldman this

14   morning --

15                   MR. KURZMAN:  Let's mark this.  I

16   think I stopped in mid sentence.  I'll mark it as

17   Exhibit X.  It's correspondence that I received this

18   morning from Mr. Feldman.

19                   (Whereupon, the February 6, 2003 fax

20   was marked as Plaintiffs' Exhibit X for

21   Identification.)

22           Q.      (By Mr. Kurzman)  Is the alternative

23   damages calculation attached as the third page of

24   that document a calculation that you prepared?

25           A.      As in this one?

1          Q.          Correct.

2          A.          Yes.

3          Q.          You testified that you personally

4    prepared the brief summary for counterclaim on

5    Exhibit O.  Did you likewise prepare this

6    alternative damages analysis?

7          A.          Yes.

8          Q.          When did you prepare this document?

9          A.          Yesterday.

10         Q.          After Mr. Andersen's deposition?

11         A.          Yes.

12         Q.          Let me just run through with you the

13   figures so that I understand them.  The first is

14   6,000c/s at 120,000 pounds?

15         A.          Yes.

16         Q.          Can you explain to me those figures?

17         A.          The top one is at 20 pounds a case.

18   That's the original value.  1,200 cases already

19   taken at the 23,600.  The balance is 97,000.

20   However, what I have done is, I have revised that

21   price down to the last final price that I offered it

22   to him, which was 17.50.

23         Q.          Let me just stop you there.  I see

24   17.25 on the prior.

25         A.          It's 17 -- well, 17.25 was one price,

## ERRATA SHEET

Please note any corrections on this sheet and sign the Jurat before a Notary Public.  The Original Jurat and Errata Sheet must be sent to Leslie Correa, 40 Valley View Road, Norwalk, Connecticut 06851 within thirty (30) days, with copies of the Errata Sheet to all counsel of record.

## CORRECTIONS

| PAGE | LINE | FROM | TO |
|------|------|------|------|
| 7 | 6 | Josay | Josée |
| 11 | 9 | Scocia Donna Karen | Scotia Duncarron |
| 11 | 13 | Scocia | Scotia |
| 11 | 17 | Donna Caron | Scotia Duncarron |
| 12 | 19 | Scocia Donna Caron | Scotia Duncarron |
| 13 | 4 | Scocia Donna Caron | Scotia Duncarron |
| 14 | 2 | Caves,Alto,Viso | Caves Altoviso |
| 16 | 19 | Models | Marks |
| 20 | 5 | 1994 | 1984 |
| 46 | 24 | Enmaset | N Messett |
| 47 | 3 | Nick | Nik |
| 62 | 8 | Aren't | Are |
| 100 | 21 | Simon Messett | Nik Messett |
| 134 | 22 | Westrum | Westerham |
| 165 | 17 | Bournemouth | Worthing |
| 200 | 15 | Expound | Ex Pounds |
| 219 | 22 | Batches | Badges |
| 220 | 17 | Batches | Badges |
| 220 | 23 | Batches | Badges |

International Brands USA Inc. and Interbrands, Inc          VS          Old St. Andrews Limited
**CASE NAME**

Julian Haswell
**DEPONENT**

February 7, 2003
**DATE OF DEPOSITION**

1

2

3    UNITED STATES DISTRICT COURT

4    FOR THE DISTRICT OF CONNECTICUT

5

6

7    _____

8                        JULIAN HASWELL

9

10

11        JULIAN HASWELL personally appeared before

12   me at _Sevenoaks, Kent United Kingdom_, ~~Connecticut~~, this _18k_ day

13   of _March_____, 2003, made oath and

14   acknowledged this deposition to be a true and

15   accurate transcription of his testimony.

16

17

18   My Commission ~~Expires~~:

19   _is permanent_

20

21   _____
                     NEVILLE CLARKSON WRIGHT

22   NOTARY PUBLIC

23

24

25

1                       C E R T I F I C A T E

2

       UNITED STATES DISTRICT COURT
3
       FOR THE DISTRICT OF CONNECTICUT
4

5          I, LESLIE CORREA, Licensed Shorthand Reporter
       and Notary Public within and for the State of
6      Connecticut, duly commissioned and qualified, do
       hereby certify that pursuant to Notice, JULIAN
7      HASWELL, the deponent herein, was by me first duly
       sworn to testify to the truth, the whole truth and
8      nothing but the truth of his knowledge touching and
       concerning the matters in controversy in this case;
9      that he was thereupon carefully examined upon his
       oath and his testimony reduced to writing by me; and
10     that the deposition is a true record of the
       testimony given by the witness.
11
           I further certify that I am neither attorney or
12     counsel for, nor related to or employed by, any of
       the parties to the action in which this deposition
13     is taken, and further that I am not a relative or
       employee of any attorney or counsel employed by the
14     parties thereto or financially interested in the
       action.
15
           IN WITNESS WHEREOF, I have hereunto set my hand
16     this 23rd day of February, 2003, at Norwalk,
       Connecticut.
17

18

19                                  _____
                                    Leslie Correa, LSR
20     My Commission Expires:       License No. 00358
       August 31, 2007              Notary Public
21                                  State of CT

22

23

24

25