***Exhibit 9 to Declaration of Marc J. Kurzman dated October 30, 2003***

***PART 3 OF 7***

{H:\DOCS\MJK\MIS\00074775.DOC}

COPY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

INTERNATIONAL BRANDS USA, Inc. and INTERBRANDS, INC.
Plaintiffs, : CASE#302CV333(JCH)

vs.

OLD ST. ANDREWS LIMITED
Defendant.

**TELEPHONIC DEPOSITION UPON ORAL EXAMINATION**

**OF**

**JULIAN GUY HASWELL**, Continued

Volume II
Pages 231 to 434

On Tuesday, August 26, 2003
Commencing at 11.00 am

Taken at the offices of:
Halliwell Landau
75 King William Street
London EC4N 7BE

Reported by: Thelma Harries, MBIVR, ACR

ANGLO-AMERICAN
COURT REPORTERS



APPEARANCES:

On behalf of the Plaintiffs:

LEVETT ROCKWOOD PC
33 Riverside Avenue
Westport
Connecticut 06880

BY : MARC J KURZMAN, ESQ

On behalf of the defendant: (By telephone)

FELDMAN & HICKEY LLC
10 Waterside Drive
Suite 303
Farmington
Connecticut 06032-3084

BY : MICHAEL FELDMAN, ESQ

In attendance:

ROLF ANDERSEN
SPEYSIDE DISTILLERS COMPANY LIMITED
PO Box 443
Farmington
Connecticut 06034

11.00 am

MR KURZMAN: Before the court reporter swears the witness, I just wanted to put a couple of preliminary matters on the record.

This is a continuation of the deposition of Mr Haswell that was commenced on February 7, 2003.

I assume, Mr Feldman, that we'll just adopt the same stipulations that are incorporated into the transcript of the February 7 deposition? Is that correct?

MR FELDMAN: I'm going to reserve my right to read and sign.

MR KURZMAN: Of course, and I think you did the first time.

The only additional stipulation we've made concerns the authority of the stenographer, the court reporter, to administer the oaths.

Mr Feldman and I have agreed, by letter dated August 4, 2003, executed by each of us, that the court stenographer will, by stipulation, be authorised to administer the oath to Mr Haswell, and that no objections will be made by the defendant to the admissibility of the



depositions, both today's depositions and tomorrow's depositions, at trial based on the qualifications of the stenographer to administer oaths.

I'm going hand, Mr Feldman, to the stenographer a copy of our August 4th letter and ask her to incorporate that into the transcript of the deposition.

(Exhibit Y marked for identification)

MR FELDMAN: Just to note, Mr Kurzman, you mentioned that the defendant would not object. I assume that no party will object, based upon the ability of the court reporter to administer oaths?

MR KURZMAN: That's correct. At this point I'm going to ask the court reporter to administer the oath to the witness, Mr Haswell.



307

basis.

Q How many customers did you have in the United States between 1996 and 2001?

A Probably three.

Q Who?

A Well, Saybrex and duty free shoppers, International Brands.

Q Saybrex?

A I believe we sold them product at some point through the introduction from Rolf.

Q Saybrex was selling product in what jurisdiction?

A I can't remember. I think they might have been ships chandlers or duty free. I don't remember.

Q But the Saybrex relationship had to do with duty free sales, correct?

A I believe it was.

Q So the only customer that you were selling to from 1996 to 2001 for sales to the domestic US market was International Brands?

A Yes.

Q Old St. Andrews knew that it could not appoint another distributor to sell to the domestic market in the United States during the

ANGLO-AMERICAN COURT REPORTERS LTD
LONDON, ENGLAND
Tel: (011 44) 20 7264 2088 Fax: (011 44) 1483 234894
Website: www.a-acr.com E-mail: info@a-acr.com

ANGLO-AMERICAN
COURT REPORTERS

THE WITNESS: Are you there, Michael?

MR FELDMAN: I am here, yes. Marc, what's your pleasure?

MR KURZMAN: Why don't we do this. Off the record.

(A short recess at 1.37 pm)

(Resumed at 2.28 pm)

BY MR KURZMAN:

Q Mr Haswell, was Old St. Andrews selling for distribution into the United States any products containing the "Clubhouse" name in 1989?

A No.

Q When did Old St. Andrews first begin to sell for distribution into the United States products containing the "Clubhouse" name?

A 1994, I believe.

Q What products?

A The 750 ml litre blended Old St. Andrews "Clubhouse".

Q Any other products using the "Clubhouse" name that were distributed into the United States in 1994?

A That one.

Q Is that it?

ANGLO-AMERICAN
COURT REPORTERS

A That's it, yes.

Q That was in the golf ball shaped bottle?

A Yes, clear glass.

Q How did the use of the name "Clubhouse" for that product come about?

A We had started marketing it back in the mid-eighties. In 1984 we thought up the name. We started marketing it in a PET bottle, which I've brought with me today.

Q You've brought the bottle with you today?

A Yes.

MR KURZMAN: Why don't we mark that? We're going to mark this bottle, and Mr Haswell will take possession of this one exhibit, because you're not going to be able to bind it into the transcript obviously.

I'm just going to ask Mr Haswell to preserve the exhibit. It's obviously going to need to be produced at trial.

Mr Haswell previously informed me off the record that there's only two of these, so we have to be careful with it and maybe it's best if Mr Haswell takes possession.



BY MR KURZMAN:

Q Are you happy with that?

A Yes. I may have more but I know I've got two of them that exist.

MR KURZMAN: Let's mark this bottle as exhibit NN.

(Exhibit NN marked for identification)

BY MR KURZMAN:

Q The court reporter has marked as exhibit NN a bottle that's a standard shape -- how many millilitre bottle, Mr Haswell?

A This is a 1 litre bottle.

Q A standard shape 1 litre Scotch bottle?

A Yes.

Q Did you complete your testimony? You said that you started to market this product in 1984?

A Yes. Well, it was conceived in 1984, and we started marketing it in duty free in 1985.

Q Now, this is a product. It's different than the Old St. Andrews' "Clubhouse" Scotch whisky. This appears to be called "Clubhouse Special"?

ANGLO-AMERICAN
COURT REPORTERS

A That's correct.

Q Am I correct?

A Yes.

Q To be distinguished from the product that was bottled in the golf ball shaped bottle?

A Yes.

Q The product in the golf ball shaped bottle is not a "Clubhouse Special" product?

A It was a similar aged whisky. The reason we took that name off this product and put it on to the new one in 1992, when we developed the round bottle for the European market, was my father and I decided to omit the name "special" and put it on to the new one, because this was discontinued by then.

We discontinued this in about 1987. Then it was resurrected in another shaped bottle for the Japanese market, in a 700 millilitre size. We sold there for a few years. It ran its course and then we changed it on to the round one.

Q Let's step back so that we have a clear chronology.

The bottle that's been marked as plaintiff's exhibit NN is a 1 litre bottle of Old St. Andrews "Clubhouse Special" blended Scotch



327

whisky?

A Yes.

Q That is a product you testified was conceived in 1984 and actually sold in 1985?

A Yes.

Q It was sold into the duty free market?

A It was.

Q Was it sold into the duty free market in the US?

A No, I don't think so.

Q What territories was it sold into?

A It was sold primarily as a launch product in the UK as the first, if you will, plastic bottle in duty free. It was the first but it wasn't the last.

Q How many cases of this product in the plastic bottle were actually sold in the UK, if you know?

A It was no more than two or three thousand cases, I'm sure.

Q Then the product was discontinued?

A Yes.

Q Was the use of the term "Clubhouse Special" attached to any other products other than

ANGLO-AMERICAN COURT REPORTERS LTD
LONDON, ENGLAND
Tel: (011 44) 20 7264 2088 Fax: (011 44) 1483 234894
Website: www.a-acr.com E-mail: info@a-acr.com

ANGLO-AMERICAN
COURT REPORTERS

328

this?

A Yes.

Q What other products was "Clubhouse Special" attached to?

A We then discontinued this one and we put it on to a new different shaped bottle, which was a smaller, similar shaped bottle to this one as a standard whisky bottle, but it was shorter. More like a Dewer's bottle. That was for the Japanese market.

Q The Japanese market exclusively?

A At that time. They wanted to continue with that label design for their market, yes. We dropped the duty free PET. The reason we dropped it was because, believe it or not, when you put this bottle on the shelf next to a standard liquor bottle, ie a 700 or 750, they look the same size, because obviously it's thinner walls and therefore it looks smaller than it really is.

Q So the "Clubhouse Special" product that had been sold in the UK duty free market was discontinued and, basically, revamped as a product to be sold in the Japanese market?

A Yes, in a different shaped bottle.

Q Understood. Are there any other

ANGLO-AMERICAN COURT REPORTERS LTD
LONDON, ENGLAND
Tel: (011 44) 20 7264 2088 Fax: (011 44) 1483 234894
Website: www.a-acr.com E-mail: info@a-acr.com

ANGLO-AMERICAN
COURT REPORTERS

329

markets in which the "Clubhouse" -- withdrawn.
How long was that revamped product sold into the Japanese market?
A If my memory serves me correctly, from the documents, from Jarvis Porter from the labels being made, I believe it was 1988 through probably to '91. Somewhere like that.
Q Were there any other markets in which the "Clubhouse Special" product was sold, other than the UK duty free market and the Japanese market?
A No.
Q After 1991, the "Clubhouse Special" product was no longer sold?
A It was transferred from that product, when we discontinued that, on to our round bottle in the European market. So we had the glass moulds made in 1992 for that.
Q So let's explore that a little deeper. That was not a "Clubhouse Special" product?
A My father and I decided it was too long winded, so we took the "special" off.
Q What was the name of the product that was sold in the European market after 1991?

ANGLO-AMERICAN COURT REPORTERS LTD
LONDON, ENGLAND
Tel: (011 44) 20 7264 2088 Fax: (011 44) 1483 234894

Website: www.a-acr.com E-mail: info@a-acr.com

ANGLO-AMERICAN
COURT REPORTERS

particular batch of glass that was sprayed affected Japan and the United States. There were two markets that got affected and we had to credit both markets. Then we changed suppliers to who could spray it. But, as we kept on selling the white one, the clear glass one grew and grew and grew, and it was obviously natural to offer that and say, "This sells better anyway."

Q So you had discussions with Mr Andersen and you went from the white golf ball to a clear golf ball? Yes or no?

A Yes.

Q The white golf ball did not include the name "Clubhouse"? The clear golf ball did?

A Yes.

Q In 1993 Old St. Andrews registered in the United Kingdom the trademark Old St. Andrews "Clubhouse", correct?

A Yes.

Q That was at the time that Old St. Andrews introduced the Old St. Andrews' "Clubhouse" product into the European market?

A The round golf ball bottle was introduced. The name "Clubhouse" had already existed on other get ups.

ANGLO-AMERICAN
COURT REPORTERS

Q The name "Clubhouse" existed in connection with the product called "Clubhouse Special", correct?

A That's right.

Q Did Old St. Andrews ever register the name "Clubhouse Special" with the UK patenting authorities?

A No.

Q Why was that?

A Because at the time it was an ancillary name to the product and, when we put it on the round golf ball bottle, we decided to register it.

Q The word "Clubhouse" you felt was ancillary to the name "Clubhouse Special"? Is that why you didn't register "Clubhouse Special"?

A The reason, if my memory serves me correctly, was, at the time when we registered the name "Clubhouse", a couple of people objected. It could have been Club, Canadian Club, or whatever else. I can't remember. But, when it was in conjunction with Old St. Andrews "Clubhouse", then it was okay.

Q So you never registered the name "Clubhouse", Mr Haswell? You registered the name

ANGLO-AMERICAN
COURT REPORTERS

