*Exhibit 9 to Declaration of Marc J. Kurzman*
*dated October 30, 2003*

**PART 5 OF 7**

376

1    law firm.   They enclosed a copy of the trademark

2    application that was filed in the US?

3              A       Yes.

4              Q       Why did Old St. Andrews decide to

5    file a trademark application with the United States

6    Patent and Trademark Office in 2003?

7              A       Why not?

8              Q       Well, why didn't -- thankfully I'm

9    asking the questions but let me take your question

10   and throw it back at you.

11                     Why didn't you do it in 1994?   Why

12   did you wait almost twenty years?

13             A       Because the product that we're

14   selling, that's an interlocutory part of the Old

15   St. Andrews "Clubhouse", was being sold in the US

16   market, and it was protecting that product in the

17   likely event of what happened subsequently or prior

18   to.

19                     MR KURZMAN: (To the court reporter)

20   Can you read back the answer to the question,

21   please?

22                     COURT REPORTER:   Certainly.

23                     "A.   Because the product that we're

24   selling, that's an interlocutory part of the Old

25   St. Andrews "Clubhouse", was being sold in the US



377

1    market, and it was protecting that product in the

2    likely event of what happened subsequently or prior

3    to."

4    BY MR KURZMAN:

5         Q       None of those facts were different

6    than the facts that existed in 1994, 1995, 1996

7    right through 2001, correct?

8         A       What facts are those?

9         Q       The ones you've just recited as to

10   the reason why you filed an application with the

11   United States Patent and Trademark office in 2003?

12        A       So?  It's to protect the product.

13        Q       Why didn't you attempt to protect

14   the product, in the twenty or so years prior to

15   2003, that was being sold in the United States?

16        A       Because nobody was making

17   a predatory attempt to register it.

18        Q       So you're saying that this trademark

19   application was filed in response to what you

20   regard as a predatory attempt to --

21        A       It came up from the search.  It

22   picked it up.

23        Q       What search?

24        A       Trademark search, which brought up

25   International Brands attempting to register it.



ANGLO-AMERICAN
COURT REPORTERS

378

```
1        Q      When was that search done?

2        A      I forget.  A year or so ago.

3        Q      Why was that search done?

4        A      As a matter of good housekeeping.

5        Q      You just decided to conduct a search

6   of the --

7        A      Yes.

8        Q      -- Patent and Trademark office?

9        A      Yes.

10       Q      Did Old St. Andrews Limited inform

11  the United States Patent and Trademark office that

12  it had disclaimed rights to the word "Clubhouse" --

13  withdrawn.

14              Do you know whether Old St. Andrews

15  Limited informed the United States Patent and

16  Trademark office that it had disclaimed rights to

17  the exclusive use of the word "Clubhouse" in its UK

18  filings?

19       A      It wasn't relevant.

20       Q      You didn't think that that was

21  relevant --

22       A      No, I don't.

23       Q      -- information?

24       A      No, I don't.

25       Q      Did you regard the word "Clubhouse"
```


ANGLO-AMERICAN
COURT REPORTER

380

1          Q          No, you're in the right document.

2    Let's just get to the right page.    (Document found)

3                     Mr Haswell, with respect to exhibit

4    17 that you've provided with your interrogatory

5    responses, exhibit 17 is a copy of the trademark

6    application for "Clubhouse" that was filed with the

7    US Patent and Trademark office in 2003, correct?

8          A          Yes.

9          Q          Now, the application that you have

10   filed with your interrogatory responses does not

11   include a photograph of the product that is claimed

12   to have been introduced into commerce, correct?

13         A          Yes.

14         Q          Is there a reason why that was

15   omitted?

16         A          No.    You don't have to put it in.

17   It wouldn't qualify as an omission.

18         Q          So you don't think that a photograph

19   of the product that is claimed to have been

20   introduced into commerce was filed with the

21   application to the United States Patent and

22   Trademark Office?

23         A          I don't think it's necessary, unless

24   they tell us otherwise.

25                     MR KURZMAN:    Let's mark as exhibit


ANGLO-AMERICAN
COURT REPORTERS

381

1   SS an application that was filed by the Frost Brown

2   firm on April 22, 2003 with the United States

3   Patent and Trademark Office.

4              (Exhibit SS marked for identification)

5              MR FELDMAN:  Excuse me, Marc.

6   You're not referring to the attachment to the

7   interrogatory responses?

8              MR KURZMAN:  That's correct.

9              MR FELDMAN:  Just so I'm clear, are

10  you referring to the group of documents which

11  starts with the Frost Brown April 22nd letter to

12  Assistant Commissioner of Trademarks?

13             MR KURZMAN:  Yes, Michael.  I think

14  you have a copy in your package.

15             MR FELDMAN:  Okay, thank you.  And

16  this is what?  SS?

17             MR KURZMAN:  Yes, that's correct.

18             MR FELDMAN:  Thanks.

19             MR KURZMAN:  So, for the record,

20  Attorney Feldman has a copy of this document back

21  in the US.

22  BY MR KURZMAN:

23        Q        This is a copy of the application

24  that was filed by your company with the US Patent

25  and Trademark office, correct?


ANGLO-AMERICAN
COURT REPORTERS

382

1       A     Yes.

2       Q     That's your signature on the second

3    page of the application form?

4       A     Yes, it is, yes.

5       Q     In fact, there is a photograph of

6    a product that was filed with the application,

7    correct?

8       A     At the bottom.

9       Q     It would be the last page?

10      A     Yes.

11      Q     That is the same bottle, if I'm not

12    mistaken, Mr Haswell, that we've marked this

13    afternoon as plaintiff's exhibit NN.  Is that

14    correct?

15      A     Yes, it is, yes.

16      Q     So you attached to your company's

17    application with the US Patent and Trademark office

18    a product that has never been sold into the United

19    States, is that correct?

20      A     That's correct, yes.

21      Q     And the label depicted in that

22    photograph has never been used on products sold

23    into the United States, correct?

24      A     No.

25      Q     No, I'm not correct?

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088      Fax: (011 44) 1483 234894

E-mail: info@a-acr.com

ANGLO-AMERICAN
COURT REPORTERS

383

```
1          A        Yes, that is correct, yes.

2          Q        Can you tell me, Mr Haswell, why

3    this particular photograph was used to support your

4    company's application to the US Patent and

5    Trademark office?

6          A        No, I can't.

7          Q        It would not be accurate to

8    represent to the United States Patent and Trademark

9    office that this photograph depicts a product that

10   was introduced into US commerce, correct?

11         A        I wouldn't say it's not correct.  It

12   would not be a reason for an objection.

13         Q        It would not be a reason for whose

14   objection?

15         A        Theirs.

16         Q        For the US Patent and Trademark

17   office objection?

18         A        No.

19         Q        Well, were you representing,

20   Mr Haswell, in attaching this photograph, that the

21   product depicted therein was introduced into

22   commerce in the United States?

23         A        No, it hasn't been.

24         Q        What was the reason for attaching it

25   to your application to the US Patent and Trademark
```



384

1    office?

2              A        I can't answer that.

3              Q        Is there a reason, Mr Haswell, that

4    you didn't provide a photograph of the Old

5    St. Andrews "Clubhouse" Scotch whisky that had, in

6    fact, been sold into the United States?

7              A        I believe that may be a mistake.  It

8    should have been the round bottle.  That's why I'm

9    a little surprised that that's the picture that's

10   there.

11             Now, whether there's been a

12   confusion or not in my office to one that's been

13   used and that's a previous product, I don't know.

14             Q        So you don't know, sitting here,

15   whether there was an intentional decision to use

16   this photograph or whether it was an oversight or

17   mistake?

18             A        I believe it's an oversight.  I'm

19   surprised to see it.

20             Q        Can you please turn to the signature

21   block?

22             A        Yes.

23             Q        Immediately above your signature is

24   the statement that the applicant -- withdrawn.

25             Immediately above the signature is



401

1        A       Do I have any other ones?

2        Q       Yes, any other products with a

3   trademark?

4        A       I've had gin products, what used to

5   be called London Burning, which is now called

6   Nightclub 101 -- or will be.

7        Q       Other than Old St. Andrews Scotch

8   whisky Old, St. Andrews "Clubhouse" and London

9   Burning, do you have any other trademarks on file

10  anywhere in the world?  "You" meaning your

11  company.

12       A       Not that I can remember.

13       Q       Those are the three?

14       A       Yes.

15       Q       Old St. Andrews "Clubhouse" is

16  registered currently in the UK?

17       A       Yes, it is, yes.

18       Q       Anywhere else?

19       A       Only the filed application in the

20  US.

21       Q       And Old St. Andrews Scotch whisky?

22       A       Is the one --

23       Q       Is registered where?

24       A       Well, all around the world in

25  various markets.  All the relevant ones.



402

1        Q      UK?

2        A      Yes.

3        Q      Far East?

4        A      Yes.

5        Q      United States?

6        A      Yes.

7        Q      Your testimony is that you have a

8 registered trademark for Old St. Andrews Scotch

9 whisky in the United States?

10       A      Yes.

11       Q      When was that filed?

12       A      I can't remember.  It's donkey's

13 years ago.  I don't remember.

14       Q      UK, Far East, US.  Any other

15 jurisdictions that you can remember as you sit

16 here?

17       A      Well, there's Malaysia, Hong Kong,

18 South Africa.  I don't know;  it's endless.  Japan,

19 Australia, New Zealand.  I'll have to check.

20 I can't remember them all.  They're all over the

21 place.

22       Q      Do you recall when you registered

23 the trademark Old St. Andrews Scotch whisky in the

24 UK?

25       A      Do I recall when?


ANGLO-AMERICAN
COURT REPORTERS

403

1        Q        When?  What year?

2        A        It's a long time ago.  We had to

3    wait quite a long time to get it, because we got it

4    through user's rights.

5        Q        Can you narrow it down to a time

6    frame for me?

7        A        I can't.

8        Q        Was it prior to the time that you

9    began to sell Old St. Andrews "Clubhouse" Scotch

10   whisky into the United States?

11       A        I would say so, yes.

12       Q        And you don't recall that last time,

13   prior to 2002, that you searched the United States

14   Patent and Trademark Office for use into the word

15   "Clubhouse"?

16       A        No.

17       Q        Do you know that an application has

18   been filed by another party in the UK to register

19   the name Old Course "Clubhouse"?

20       A        Yes.

21       Q        Has your company taken any action

22   with respect to that application?

23       A        I considered it.

24       Q        But you have not taken any action?

25       A        Not currently, no.

**ANGLO-AMERICAN COURT REPORTERS LTD**
**LONDON, ENGLAND**

Tel: (011 44) 20 7264 2088              Fax: (011 44) 1483 234894

Website: www.a-acr.com                  E-mail: info@a-acr.com


ANGLO-AMERICA
COURT REPORTER
LTD

404

1          Q        Are you aware that another company

2    has filed an application to register in the UK the

3    name UK Old Course "Clubhouse"?

4          A        No, I didn't, no.

5          Q        But you are aware of the Old Course

6    "Clubhouse" registration?

7          A        Yes, I am, yes.

8          Q        Mr Haswell, does Old St. Andrews

9    Limited claim that it has suffered any damages or

10   loss as a consequence of International Brands

11   having filed a trademark application with the

12   United States Patent and Trademark office for the

13   trademark "Clubhouse"?

14         A        Well, it's an unquantifiable

15   question.

16         Q        How is it unquantifiable?

17         A        Well, because I'm not selling on the

18   US market at the moment and I have no intentions to

19   until this is resolved.  So I can't answer the

20   question because I don't know if there is.

21         Q        So, sitting here today, you can't

22   tell me whether your company has suffered any

23   damage or loss as a consequence of the trademark

24   application that my client has filed with the US

25   Patent and Trademark office?



405

```
 1           A       With due respect, it's an

 2    intangible.  It can't be answered in the event of

 3    International Brands marketing a likewise product,

 4    then yes there would be a damage.

 5           Q       I'm sorry, I didn't hear the last

 6    part of your answer?

 7           A       If International Brands marketed

 8    a "Clubhouse" in the same bottle then, yes, it

 9    would be damaging our products, because it belongs

10    to us.

11           Q       Up until that point, there is no

12    damage that you can ascertain?

13           A       No.

14           Q       No, there isn't?

15           A       Because there's no tangible product

16    on the market, as such, that I know of.

17           Q       Do you have any reason to believe

18    that International Brands is currently bottling and

19    selling a Scotch whisky product under the Court

20    House name?

21           A       I don't have reason to believe

22    because I haven't seen it.

23           Q       Have you any reason to believe that

24    International Brands is selling any product

25    containing the "Clubhouse" trademark, other than
```

