UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------x
                                    :
INTERNATIONAL BRANDS USA, Inc. and  :
INTERBRANDS, INC.                   :
                                    :
     Plaintiffs,                    :  CIVIL ACTION NO.:
                                    :
v.                                  :  302 CV 333 (MRK)
                                    :
OLD ST. ANDREWS LIMITED             :
                                    :
     Defendant.                     :  OCTOBER 30, 2003
                                    :
------------------------------------x
```

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Marc J. Kurzman
Federal Bar No. ct01545
Dorit S. Heimer
Federal Bar No. ct01219
LEVETT ROCKWOOD P.C.
33 Riverside Avenue
Post Office Box 5116
Westport, Connecticut 06881
Telephone: (203) 222-0885
Facsimile: (203) 226-8025

{H:\DOCS\MJK\MEM\00073547.DOC ver 3}

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------x
                                    :
INTERNATIONAL BRANDS USA, Inc. and  :
INTERBRANDS, INC.                   :
                                    :
     Plaintiffs,                    :   CIVIL ACTION NO.:
                                    :
v.                                  :   302 CV 333 (MRK)
                                    :
OLD ST. ANDREWS LIMITED             :
                                    :
     Defendant.                     :   OCTOBER 30, 2003
                                    :
------------------------------------x
```

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

**Preliminary Statement**

Plaintiffs International Brands USA, Inc. and Interbrands, Inc. (collectively "International Brands"), the former exclusive U.S. distributors of Scotch whisky products manufactured by defendant Old St. Andrews Limited ("OSA" or "defendant"), seek to recover damages arising from defendant's summary and unlawful termination of the parties' exclusive distributorship agreement. Consistent with the maxim that the best defense is a good offense, defendant has asserted the following counterclaims against International Brands ("Additional Counterclaims") based on nothing more than International Brands' application to the U.S. Patent and Trademark Office to register the trademark "Clubhouse" for Scotch whisky:

- Count Five – Claiming violation of the Lanham Act

- Count Six – Seeking a declaratory judgment as to ownership of the "Clubhouse" trademark

- Count Seven – Claiming breach of fiduciary duty

- Count Eight – Claiming violation of CUTPA

- Count Nine – Claiming violation of CUTPA

As demonstrated below, International Brands' filing of a trademark application -- a petition to a government agency -- is constitutionally protected conduct that provides no factual or legal basis for the Additional Counterclaims.  The material facts are undisputed and International Brands is entitled, as a matter of law, to judgment dismissing the Additional Counterclaims.

## Procedural History

International Brands commenced this action in February 2002. The complaint alleges that International Brands entered into an exclusive distributorship agreement with defendant memorialized in an appointment letter executed by OSA's former Chairman, Robert Haswell, dated August 2, 1989.  Pursuant to the parties' agreement, International Brands imported and distributed in the United States Scotch whisky products manufactured by OSA; it also invested substantial time and money advertising and promoting those products, particularly Old St. Andrews Clubhouse Scotch whisky.  The complaint further alleges -- and it is undisputed -- that by letter dated November 21, 2001 Robert Haswell's son, Julian, terminated "with immediate effect" defendant's relationship with International Brands.  International Brands

claims such termination was unlawful and caused International Brands to suffer damages exceeding $1,000,000 (inclusive of unpaid invoices for returned goods and unamortized advertising/promotional expenses).

Defendant filed its Answer, Affirmative Defenses and Counterclaims ("Answer") on April 18, 2002. In that pleading, defendant denied the material allegations of the complaint, raised thirteen affirmative defenses and asserted four counterclaims alleging, <u>inter alia</u>, that International Brands wrongfully refused to accept delivery of goods and acted in bad faith in returning certain goods to OSA.

During the year following the filing of defendant's Answer, the parties pursued discovery relevant to their respective claims and defenses in accordance with a Case Management Plan, approved by the Court on May 8, 2002, imposing an April 30, 2003 discovery cutoff. <u>See</u>, Court Docket Entry dated May 8, 2002.

On March 10, 2003, as discovery was closing, defendant filed a Motion to Amend. In its Motion to Amend, defendant represented that "[d]uring December 2002, OSA discovered that [International Brands], on October 10, 2001, filed an application (the 'Application') with the United States Patent and Trademarks [sic] Office for registration of 'Clubhouse' as a trademark in connection with Scotch whisky." Motion to Amend at Par. (1). The Motion to Amend recited defendant's objections to the filing and content of International Brands' application and requested leave to file the Additional Counterclaims. As described by

defendant in its Memorandum in Support of Motion to Amend Counterclaims ("Memorandum in Support"):

> Proposed counts five, six, seven and eight allege claims under the Lanham Act, for declaratory judgment, for breach of fiduciary duty, and under the Connecticut Unfair Trade Practices arising from International Brands [sic] attempt to register and use the Clubhouse trademark and name.

See Memorandum in Support at pp. 3-4.

Judge Hall granted defendant's Motion to Amend on April 11, 2003 (See, Court Docket Entry dated April 11, 2003) and discovery has since proceeded on the Additional Counterclaims pursuant to an Amended Case Management Plan.  Based on the undisputed facts established through that discovery (and other sources) International Brands moves for summary judgment on the Additional Counterclaims.

**Undisputed Facts Relevant to the Additional Counterclaims**

When International Brands first began in 1989 to import Scotch whisky products manufactured by OSA, those products displayed the name "Old St. Andrews."  Affidavit of Rolf Andersen (hereinafter "Andersen Aff."), Par. 3.  Defendant had applied in November 1986 to register "Old St. Andrews" as a trademark in the United Kingdom which registration was issued by the United Kingdom Patent Office in January 1989.  Declaration of Marc J.

Kurzman (hereinafter "Kurzman Dec."), Ex. 7.  Defendant also registered that trademark in the United States.  (H: 401-402).[1]

Prior to 1994, the word "Clubhouse" was <u>not</u> displayed on the Scotch whisky products purchased from the defendant by International Brands for distribution in the United States.  (Andersen Aff., Par. 4; <u>see</u> <u>also</u> H: 323-324).  Beginning in or about 1994, "Clubhouse" was displayed on the Old St. Andrews Scotch whisky product bottled in a 750ml golf-ball-shaped bottle and distributed by International Brands in the United States.  (Andersen Aff., Par. 5).  Subsequently, that product was also distributed by International Brands in a 50ml golf-ball-shaped bottle.  (<u>Id.</u>).

Whose idea it was to display "Clubhouse" on Scotch whisky products purchased from OSA for distribution in this country is a disputed issue in this case.  International Brands claims the addition of the "Clubhouse" name to the golf-ball-shaped bottle (and associated packaging) was at its behest and for its benefit.  OSA claims the decision to add that name was entirely its own.  Nevertheless, the undisputed and dispositive facts for purposes of this Motion for Summary Judgment are as follows:

---

[1] References (H:    ) refers to the deposition of Julian Haswell, excerpts of which are filed as Exhibit 9 to the Declaration of Marc J. Kurzman.  Reference (H: Ex   ) refer to documents authenticated by Mr. Haswell and marked as Exhibits during Mr. Haswell's deposition, four which are annexed to Ex. 9 to the Kurzman Declaration.

- When "Clubhouse" began being displayed on the golf-ball-shaped bottles of Old St. Andrews Scotch whisky, defendant either attempted without success or was advised against trying to register with the United Kingdom Patent Office the free-standing trademark "Clubhouse." (H: 339-341; 369-372).

- Instead, defendant registered the composite trademark "Old St. Andrews Clubhouse" with the United Kingdom Patent Office which registration was issued November 11, 1994. Id. (See also Kurzman Dec., Ex. 8).

- In registering the "Old St. Andrews Clubhouse" trademark in the United Kingdom, defendant expressly disclaimed any rights to exclusive use of the word "Clubhouse." (H: 341, 373-374; Exs. RR13 and RR14. See also Kurzman Dec., Ex. 8).

- Although defendant registered the trademark "Old St. Andrews" with the USPTO, defendant never registered or sought to register either the free-standing trademark "Clubhouse" or the composite trademark "Old St. Andrews Clubhouse" with the USPTO. (H: 343-344; 401-402).

- International Brands has been the only distributor of Old St. Andrews Clubhouse Scotch whisky products in the United States domestic market. (H: 307, 348).

- On October 6, 2001, Beverage Marketing USA, Inc., a company unrelated to the parties in this matter, filed with the USPTO an application to register the trademark "Clubhouse" for beer ("Beverage Marketing Application"). Declaration of Albert Robin (hereinafter "Robin Dec."), Par. 4.

- International Brands filed with the USPTO opposition to the Beverage Marketing Application which opposition was sustained by the USPTO. (Robin Dec., Pars. 4 and 6; Exs. 3 and 4).

- Defendant never opposed the Beverage Marketing Application. (Robin Dec., Par. 4).

- On or about October 10, 2001, International Brands filed with the USPTO an application to register "Clubhouse" as a trademark for Scotch whisky (the "International Brands Application"). (Robin Dec., Par. 2 and Ex. 2).

- The International Brands Application has not yet been published for opposition. (Robin Dec., Par. 8).

- OSA terminated its relationship with International Brands effective November 21, 2001. (Andersen Aff., Par. 8).

- International Brands has not manufactured, promoted, advertised or sold any Scotch whisky products displaying the name "Clubhouse" other than its remaining inventory of Scotch whisky products purchased from the defendant. (Andersen Aff., Par. 8)

- Since terminating its relationship with International Brands, defendant has not sold its products to any other importer/distributor for the United States domestic market. (H: 83-85; 348).

As indicated above, on October 10, 2001, International Brands filed an application with the USPTO to register "Clubhouse" as a trademark for Scotch whisky. On April 22, 2003, defendant filed its own application with the USPTO to register "Clubhouse" as a trademark for Scotch whisky -- a mark it had disclaimed exclusive rights to in its home country. (H: 380, Ex. RR17). Defendant's application was filed in response to the International Brands Application. (H: 375-377).

In support of its claim of actual use of the trademark "Clubhouse" in the United States, defendant attached to its trademark application a photograph of a product displaying the name "Clubhouse Special." (H: 380-382, Ex. SS). Defendant now admits Clubhouse Special was never sold in the United States. (H: 325-329, 357-359, 382-384).

Under the rules of the USPTO (further described below), an opposition proceeding may be filed against a trademark application after publication of the application in the <u>Official Gazette</u>. Neither the International Brands Application nor defendant's application has yet been published. Accordingly, no

opposition proceeding has yet been convened with respect to either application, and the USPTO has not yet determined whether either application should be granted.

## Summary of Argument

As a threshold matter, the conduct upon which the Additional Counterclaims are based -- the mere submission of a trademark application to the USPTO for a trademark that has never been registered in the United States -- cannot possibly violate defendant's rights.  Moreover, the cases applying the "Noerr-Pennington doctrine" make it abundantly clear that filing a single application with a federal agency, as International Brands has done here, is protected by the First Amendment to the United States Constitution.  Summary judgment must therefore enter in favor of International Brands on Counts Five, Seven, Eight and Nine of the Additional Counterclaims which seek damages and injunctive relief.

Resolution of the Noerr-Pennington issue in favor of International Brands requires no further analysis of the Additional Counterclaims seeking damages and injunctive relief. However, even if the Court were to conclude that the Noerr-Pennington doctrine is not dispositive of those Additional Counterclaims, summary judgment would still be appropriate because an attempt to register a trademark with the USPTO is not covered by the Lanham Act and does not involve interstate or Connecticut commerce.  Furthermore, defendant concedes it has suffered no damages as a consequence of International Brands'

efforts to register "Clubhouse" with the USPTO.  The absence of those elements is fatal to Counts Five, Seven, Eight and Nine.

Count Six, seeking a declaratory judgment as to ownership of the Clubhouse trademark, is also defective.  Based on the undisputed facts in this case, there is no actual controversy between the parties within the meaning of the Declaratory Judgment Act.  Accordingly, subject matter jurisdiction is absent.  Furthermore, defendant seeks to short-circuit the administrative process and have this Court decide in the first instance whether International Brands is entitled to register "Clubhouse" as a trademark for Scotch whisky.  Original jurisdiction over that issue rests with the USPTO.

## **Argument**

### A.   **THE SUMMARY JUDGMENT STANDARD**

F.R. Civ. P. 56(c) provides that summary judgment shall issue if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R. Civ. P. 56(b) authorizes plaintiffs to move for summary judgment on the Additional Counterclaims.

International Brands concedes that on a motion for summary judgment the evidence must be viewed in a light most favorable to the non-moving party.  However, the non-moving party cannot rest on the mere allegations of its pleading.  Rather, it must demonstrate the existence of material facts that create a <u>genuine</u>

issue for trial -- meaning a factual dispute that would affect the outcome of the lawsuit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 245; 106 S. Ct. 2505, 2508 (1986).

Where a party's conduct is privileged or immune from liability as a matter of law, summary judgment is particularly appropriate.  See Kenney v. Scripps Howard Broad. Co., 259 F.3d 922, 924 (8th Cir. 2001).  Furthermore, if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that parties' case, there can be no genuine issue of matter of fact for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-323; 106 S. Ct. 2548, 2552 (1986). Both of those principles apply here.  Noerr-Pennington immunity applies to International Brands' conduct as a matter of law, and the undisputed material facts demonstrate that essential elements of defendant's Additional Counterclaims are absent.  Summary judgment should, therefore, issue in favor of International Brands.

**B.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THE ADDITIONAL COUNTERCLAIMS BECAUSE THE INTERNATIONAL BRANDS APPLICATION IS PROTECTED FIRST AMENDMENT CONDUCT**

Defendant has represented to the Court that Counts Five, Six, Seven and Eight of the Additional Counterclaims arise from International Brands' attempt to register and use the Clubhouse trademark and names.  Memorandum in Support at pp. 3-4.  While defendant carefully excludes Count Nine from that description, a fair reading of that Count reveals that it too is based on the

core contention that International Brands has improperly sought to register and use the trademark "Clubhouse."  Count Nine embellishes that core contention by alleging International Brands had engaged in a pattern of conduct designed to misappropriate the Clubhouse trademark culminating in the filing of a trademark application that, according to OSA, falsely represented that no other person had the right to use the "Clubhouse" mark in commerce.[2]  However, it is undisputed that International Brands has not manufactured, advertised, promoted or sold any products displaying the word "Clubhouse," except for its distribution of products purchased from the defendant.[3]  Accordingly, Counts Five, Six, Seven, Eight and Nine must rise or fall on a determination of whether International Brands can be held liable for applying to the USPTO to register the trademark "Clubhouse."

A fundamental right guaranteed by the First Amendment to the United States Constitution is the right to petition the Government.  A body of First Amendment jurisprudence has developed around the principle -- frequently referred to as the Noerr-Pennington doctrine -- that liability normally cannot be imposed for activities involving legislative, executive, administrative or judicial action.[4]

---

[2] It bears noting that "charges of fraud and non-disclosure [that rely on an applicant's alleged duty to disclose uses of the same mark by others] have been uniformly rejected."  Nissan Motor Co., Ltd., et al. v. Nissan Computer Corporation, 2002 U.S. Dist. LEXIS 6365 at *11 (C.D. Cal. 2002), citing McCarthy on Trademarks and Unfair Competition, § 31:76 at 31-129.

[3] Defendant has no objection to that activity.  In fact, the relief sought by defendant expressly permits International Brands to liquidate its "Old St. Andrews Inventory."  See, Amendment to Counterclaim Dated July 18, 2003 at p. 11.

[4] See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127; 81 S. Ct. 523 (1961), United Mine Workers v. Pennington, 381 U.S.

Although the original cases establishing the Noerr-Pennington doctrine addressed the issue in the context of immunity from anti-trust liability, the doctrine has been extended in this circuit to insulate First Amendment conduct from Connecticut common law liability and liability under the Connecticut Unfair Trade Practices Act.  See, Suburban Restoration Co., Inc. v. ACMAT Corp., 700 F.2d 98, 102 (2d Cir. 1983) (filing of a non-sham lawsuit could not form basis of a claim under CUTPA or a Connecticut common law tortious interference claim); Hartford Life Ins. Co. v. Variable Annuity Life Ins. Co., 964 F.Supp. 624 (D.Conn. 1997) (trademark infringement lawsuit could not form basis of a common law unfair competition counterclaim).  See also Zeller v. Consolini, 59 Conn. App. 545 (2000) (repeated zoning appeals held to be shielded from claims of vexatious litigation and tortious interference).[5]

Furthermore, as a matter of federal law, the Noerr-Pennington doctrine operates to insulate First Amendment conduct from liability under the Lanham Act.  See, Santana Products v. Bobrick Washroom Equipment, Inc., 249 F.Supp.2d 463, 492-494 (M.D. Pa. 2003).  In Santana Products, the plaintiff's manufacturer of restroom partitions brought a Lanham Act claim

---

657; 85 S. Ct. 1585 (1965), California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508; 92 S. Ct. 609 (1972).
[5] Suburban Restoration, Hartford Life Ins. Co., and Zeller involved petitioning the government through use of the courts.  Of course, petitioning the government through applications to administrative agencies such as the USPTO also falls within the ambit of the First Amendment.  See, The Dow Chemical Co. v. Exxon Corp., 30 F.Supp.2d 673, 691-693 (1998) (recognizing, in context of a 12(b)(6) motion, that Noerr-Pennington doctrine would apply to defendant's patent applications to the USPTO unless evidence showed that applications were fraudulent).

(as well as other claims) against certain competitors alleging, _inter alia_, that the competitors had sought (and succeeded) in having various governmental bodies adopt product specifications that effectively precluded plaintiffs from bidding on public contracts.  The district court held that such conduct fell within the ambit of the Noerr-Pennington doctrine and that the Noerr-Pennington doctrine was applicable to Lanham Act claims:

> The same rationale that has compelled courts to extend _Noerr/Pennington_ immunity beyond the antitrust context persuades me that _Noerr/Pennington_ should also extend to Lanham Act § 43(a) claims.  Exercise of the right to petition the government would be restrained if immunity did not extend to Lanham Act claims. . . .  Thus, where, as here, the challenged conduct falls within the First Amendment right to petition the government, _Noerr/Pennington_ immunity must extend to Lanham Act § 43(a) claims.

_Id._ at 493.

International Brands recognizes that there exists a so-called sham exception to the Noerr-Pennington doctrine.  However, neither the allegations of the Amended Counterclaim nor the undisputed facts implicate the sham exception.  The sham exception involves a two-part test articulated by the Supreme Court as follows:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr* . . . Only if challenged litigation is objectively meritless may a court examine a litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere *directly* with the business relationships of a competitor," *Noerr,* supra, 365 U.S. at 144, 81 S. Ct. at 533 (emphasis added), through the "use [of] the governmental *process* -- as opposed to the *outcome* of that process -- as an anti-competitive weapon," [City of Columbia v. Omni Outdoor Advertising], 499 U.S. at 380, 111 S. Ct. at 1354 (emphasis in original). This two-tiered process requires the plaintiff to disprove the challenged lawsuit's *legal* viability before the court will entertain evidence of the suit's *economic* viability.

Professional Real Estate Investors Inc. v. Columbia Pictures Industries, 508 U.S. 49, 61-62; 113 S. Ct. 1920, 1928 (1993).

A party invoking the sham exception must allege conduct falling within that exception. Hartford Life Ins. Co., supra, 964 F.Supp. at 628. Nowhere in its Additional Counterclaims does OSA assert facts, which if proved, would satisfy the first part of the "sham" test by showing the International Brands Application to be objectively meritless. To be sure, defendant alleges that OSA, not International Brands, is the owner of the "Clubhouse" trademark. However, it is well settled that a manufacturer of a product distributed by others does not automatically own every trademark associated with the product; a distributor may very well hold ownership of one or more such

trademarks.  See <u>McCarthy on Trademarks and Unfair Competition</u>
Vol. 2, § 16:46.

Furthermore, the undisputed facts reveal that:

- International Brands has been the sole distributor of Scotch whisky products displaying the word "Clubhouse" in the U.S. domestic market.

- OSA previously disclaimed any exclusive right to use the word "Clubhouse" in its registration of the composite mark "Old St. Andrews Clubhouse" with the United Kingdom Patent Office.

- OSA has not objected to the efforts of third parties (other than International Brands) to register the trademark "Clubhouse." (H: 403).

- OSA's own application to the USPTO was filed only as a response to the International Brands Application.

Given these facts, the International Brands Application could not possibly be found to be objectively meritless; therefore, the sham exception cannot serve as a barrier to summary judgment.[6]  Furthermore, there are absolutely no facts suggesting that International Brands filed its trademark application to cause injury, expense or delay to OSA rather than to secure the registration of the "Clubhouse" trademark.  To the contrary, OSA admits that it did not even know about the International Brands application until more than a year after it was filed, and that OSA only "inadvertently discovered" the application.  In these circumstances, defendant can hardly claim that International Brands was using the governmental process -- as opposed to the outcome of that process -- as an

---

[6] Where there is no dispute over the predicate facts, the question of whether prosecution of judicial or administrative action is "objectively baseless" is a question of law for the Court. <u>Professional Real Estate Investors</u>, supra, 113 S. Ct. at 1930.

anticompetitive weapon.   <u>See</u>, <u>City of Columbia v. Omni Outdoor Advertising</u>, 499 U.S. 365, 380; 111 S. Ct. 1344, 1354 (1991).[7]

In sum, the Noerr-Pennington doctrine insulates International Brands from liability to OSA arising from the submission of a trademark application to the USPTO. International Brands is therefore entitled to summary judgment on Counts Five, Seven, Eight and Nine.

**C.   THE CONDUCT ABOUT WHICH DEFENDANT COMPLAINS DOES NOT INVOLVE INTERSTATE OR CONNECTICUT COMMERCE**

Even if defendant were somehow able to escape application of the Noerr-Pennington doctrine, International Brands is entitled to summary judgment on the Additional Counterclaims asserting violation of the Lanham Act and CUTPA (Counts Five, Eight and Nine) because the conduct defendant complains about does not involve commerce.

Section 43(a) of the Lanham Act imposes civil liability on any person who engages in false advertising or makes false or misleading representations of fact "in commerce," 15 U.S.C. § 1125(a).  "To make out a violation of section 43 the plaintiff must show:  1) the involvement of goods or services; 2) an effect on interstate commerce; 3) a false description or designation of origin with respect to the goods or service involved; and 4) a reasonable basis for the believe that one has been injured." <u>Manufacturers Technologies, Inc. v. CAMS, Inc.</u>, 706 F.Supp. 984 (D. Conn. 1989).

---

[7] In its Memorandum in Support, OSA asserted that it "discovered the [International Brands Application] inadvertently in December 2002."  <u>See</u> Memorandum in Support at p. 3.

It has been recognized in this circuit for almost thirty years that "Section 43(a) [of the Lanham Act] is intended to reach false advertising violations, not false [trademark] registration claims." <u>La Societe Anonyme Des Parfums Le Galion v. Jean Patou, Inc.</u>, 495 F.2d 1265, 1271 fn. 6 (2d. Cir. 1974). Indeed, in a recent case analogous to this one, involving claims by members of the Russian Smirnoff family that a Connecticut company had, <u>inter alia</u>, misappropriated the "Smirnoff" name in manufacturing and distributing Smirnoff brand vodka, the Third Circuit reaffirmed that a claim under § 43(a) cannot be predicated on a party's "attempts to establish trademark rights." <u>Joint Stock Society v. UDV North America, Inc.</u>, 266 F.3d 164, 172 (3d. Cir. 2001), citing Charles E. McKinney, George F. Long III, <u>Federal Unfair Competition: Lanham Act</u> (2000) § 43(a) § 2.02[6] (2000).

Furthermore, as noted above, the term "in commerce" as used in the Lanham Act refers to interstate commerce. <u>Licata & Co. v. Goldberg</u>, 812 F.Supp. 403, 408-409 (S.D.N.Y. 1993) citing <u>Arrow United Industries v. Hughes Richards, Inc</u>., 678 F.2d 410, 413 n.5 (2d Cir. 1982). Here, International Brands has done nothing more than file a trademark application with the USPTO. It has not manufactured any Scotch whisky products displaying the word "Clubhouse." It has not distributed any Scotch whisky products displaying the word "Clubhouse" (other than products it purchased from the defendant). It has not advertised or promoted any Scotch whisky products displaying the word "Clubhouse" (other than products it purchased from defendant). There is simply no conduct "in commerce" upon which to base a Lanham Act claim.

Similarly, CUTPA imposes civil liability on any person who engages in unfair methods of competition or unfair and deceptive acts or practices in "the conduct of any trade or commerce."  The statutory definition of "trade" and "commerce" is as follows:

> "Trade" and "commerce" means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property. . .in this state.

Conn. Gen. Stat. § 42-110a(4).

Once again, the mere filing of an application with the USPTO in Washington, D.C. cannot possibly constitute "trade" and "commerce" as defined in the CUTPA -- and certainly cannot constitute activity of any type <u>in</u> <u>Connecticut</u>.  Accordingly, OSA cannot establish a required element of its CUTPA claims.

In sum, the absence here of any conduct of the type sought to be addressed by the Lanham Act or CUTPA requires that summary judgment enter for International Brands on Counts Five, Eight and Nine.

**D.    DEFENDANT HAS NOT SUFFERED ANY ASCERTAINABLE LOSS AS A RESULT OF THE INTERNATIONAL BRANDS APPLICATION**

Defendant alleges in Counts Five, Seven, Eight and Nine that it has somehow been harmed, damaged or suffered an ascertainable loss of money or property as a result of the International Brands Application.  Such allegations are of course necessary elements of defendant's Lanham Act, breach of fiduciary duty and CUTPA claims. However, OSA concedes and the undisputed facts reveal what is intuitively obvious -- OSA has suffered no harm, damage or

ascertainable loss as a consequence of International Brands' mere filing of a trademark application with the USPTO.

Pursuant to the Court-approved Amended Case Management Plan, OSA was required to file its damages analysis with respect to the Additional Counterclaims by May 30, 2003. (Kurzman Dec., Ex. 1). No such damages analysis was filed by defendant after the Court's approval of the Amended Case Management Plan. (Kurzman Dec., Par. 3).

In an exchange of correspondence dated July 2-3, 2003, OSA's counsel asserted that defendant would be relying on the damages analysis it submitted prior to the filing of its Additional Counterclaims. (Kurzman Dec., Exs. 2-4). That damages analysis relates exclusively to International Brands' alleged failure to purchase certain Old St. Andrews products. (Kurzman Dec., Exs. 5 and 6; H: 174-176, 216-217). No analysis has been provided by OSA concerning damages allegedly arising from the facts alleged in the Additional Counterclaims.

Furthermore, defendant's principal, Julian Haswell, has testified that OSA has suffered no ascertainable loss as a result of the filing of the International Brands Application. On August 27, 2003, Mr. Haswell testified as follows:

> Q.   Mr. Haswell, does Old St. Andrews
>      Limited claim that it has suffered any
>      damages or loss as a consequence of
>      International Brands having filed a
>      trademark application with the United
>      States Patent and Trademark Office for
>      the trademark "Clubhouse"?
>
> A.   Well, it's an unquantifiable question.

Q.    How is it unquantifiable?

A.    Well, because I'm not selling on the U.S.
      market at the moment and I have no
      intentions to until this is resolved.  So
      I can't answer the question because I
      don't know if there is.

Q.    So, sitting here today, you can't tell me
      whether your company has suffered any
      damage or loss as a consequence of the
      trademark application that my client has
      filed with the U.S. Patent and Trademark
      office?

A.    With due respect, it's an intangible.  It
      can't be answered in the event of
      International Brands marketing a likewise
      product, then yes there would be a damage.

Q.    I'm sorry, I didn't hear the last part of
      your answer.

A.    If International Brands marketed a
      "Clubhouse" in the same bottle then yes, it
      would be damaging our products, because it
      belongs to us.

Q.    Up until that point, there is no damage
      that you can ascertain?

A.    No.

Q.    No, there isn't?

A.    Because there's no tangible product on the
      market, as such, that I know of.

Q.    Do you have any reason to believe that
      International Brands is currently bottling
      and selling a Scotch whisky product under
      the Clubhouse name?

A.    I don't have reason to believe because I
      haven't seen it.

Q.    Have you any reason to believe that
      International Brands is selling any product
      containing the "Clubhouse" trademark, other
      than its remaining inventory of product
      that it purchased from your company?

> A.    I'm not aware of it.
>
> Q.    So your company hasn't suffered any loss or
>       damage simply as a consequence of the
>       application that was filed by my client,
>       correct?
>
> A.    Well, as I said to you, I've answered that
>       question; it's an intangible, "it is."
>       That's it.  It's intangible.
>
> Q.    Because my client isn't selling any product
>       right now?
>
> A.    There is no Old St. Andrews "Clubhouse"
>       being sold in the U.S. market as we speak,
>       that I know about.

(H: 404-406).

The foregoing testimony demonstrates that defendant's bare allegations of harm, damages and/or ascertainable loss are entirely unsupportable.  For this additional reason, International Brands is entitled to summary judgment on the Lanham Act, breach of fiduciary duty and CUTPA claims.[8]

**E.    DEFENDANT'S DECLARATORY JUDGMENT CLAIM MUST FAIL FOR LACK OF AN ACTUAL CASE OR CONTROVERSY**

In Count Six, defendant seeks a declaration that International Brands' theoretical future use of the "Clubhouse" mark on products other than those manufactured by OSA would infringe defendant's purported rights in that mark.  Two elements must be present for the Court to exercise subject matter jurisdiction over a "preemptive" declaratory judgment claim of this sort:  (1) the declaratory judgment defendant must be

---

[8] In terms of the breach of fiduciary duty claim, it also bears noting that there is no basis in the record for finding a "fiduciary relationship" between International Brands and OSA.  Indeed, OSA has repeatedly characterized International Brands as a mere "customer" that had no contractual obligations to OSA.  (H: 57-58, 98-100, 140.)

engaged in infringing activity, "or be making meaningful preparation for such activity"; and (2) the declaratory judgment plaintiff must be engaged in a course of conduct that creates a reasonable apprehension that a real conflict will be forthcoming. See <u>Lang v. Pacific Marine & Supply Co.</u>, 895 F.2d 761, 764 (Fed. Cir. 1990). <u>See</u> <u>also</u> <u>GMA Accessories, Inc. v. Idea Nuova, Inc.</u>, 157 F.Supp.2d. 234, 244 (S.D.N.Y. 2000).[9]  Neither element is present here.

It is undisputed that International Brands is not currently selling, and has never sold, any Scotch whisky product bearing the "Clubhouse" mark other than the products purchased from the defendant.  Nor is there any evidence that International Brands is "making meaningful preparation for such activity."  The test for "meaningful preparation" is whether a party is "actively preparing to produce" an allegedly infringing product such that it has reached "the last point before the point of no return." <u>Starter Corp. v. Converse, Inc.</u>, 84 F.3d 592, 596 (2d Cir. 1996). A general desire to use a mark is not enough.  <u>Id.</u>, <u>Joint Stock Society v. UDV North America, Inc.</u>, 53 F.Supp.2d 692, 701-707 (D. Del. 1999), <u>aff'd</u> on other grounds, 266 F.3d 164 (3d Cir. 2001) (foreign manufacturer's sale of "Smirnov" vodka overseas not sufficient to create a controversy in U.S.).

---

[9] A claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, "must present a 'case or controversy' within the meaning of Article III of the Constitution. <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 81 L.Ed. 617, 57 S. Ct. 461 (1937)." <u>Windsurfing International, Inc. v. AMF Inc.</u>, 828 F.2d 755 (Fed. Cir. 1987).  The party seeking the declaratory judgment "has the burden of establishing an actual controversy by a preponderance of the evidence." <u>Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.</u>, 80 F.Supp.2d 815, 872 and 873-876 (N.D. Ill. 1999).

Defendant alleges that International Brands is familiar with the liquor industry and possesses the general knowledge and contacts necessary to arrange for the production and marketing of its own brand of Scotch whisky (Amended Counterclaim, Par. 19). Such facts, conceded by International Brands for purposes of this motion, cannot possibly satisfy the "meaningful preparation" test. Merely knowing how to make or sell a product is not evidence of active steps to do so, and does not create any material issue of fact regarding "active preparation." See Id. at 704-705 (no evidence of, inter alia, a business plan, a marketing campaign, consumer surveys, selection of distributors, applications to government agencies for approval of products or labels, or any other strategic decisions sufficient to constitute "meaningful preparation").

Nor does International Brands' advertising of the "Clubhouse" trademark and its filing of the International Brands Application constitute meaningful preparation for any allegedly infringing activity. The only advertising of the "Clubhouse" mark by International Brands has been for products purchased from the defendant. The International Brands' trademark Application is likewise based on the sale of those products, the legality of which is not challenged by defendant. The mere filing of such an application with the USPTO creates no foundation for a declaratory judgment action. See GMA Accessories, supra, 157 F.Supp.2d at 244.

The second element -- which focuses on the declaratory judgment plaintiff's own conduct -- is also missing in this case.

It is undisputed that OSA is not now selling any "Clubhouse" products into the U.S. market.  Nor is OSA "making meaningful preparation" to do so.  To the contrary, Julian Haswell stated unequivocally in his deposition that, since abruptly terminating International Brands' distribution rights, "I haven't taken any active steps," to develop a market in the United States. (H: 84-85).  Absent concrete steps to develop a marketing and distribution plan and network in the United States, OSA's overseas activities and possible desire to sell in the United States are not enough to establish "meaningful preparation," even if coupled with a fear of potential litigation if the defendant enters the U.S. market.  <u>Joint Stock Society</u>, supra, 53 F.Supp.2d at 704-707.

        In short, no conduct even arguably violative of OSA's rights is occurring or imminently threatened.  Defendant is effectively seeking from this Court an advisory opinion declaring whose rights will take priority in the event the parties introduce competing "Clubhouse" products into the U.S. market.  Such advisory opinions are beyond the Court's jurisdiction. <u>Windsurfing</u>, supra, 828 F.2d at 758; <u>Planet Hollywood</u>, supra, 80 F.Supp.2d at 876; <u>Joint Stock Society</u>, supra, 53 F.Supp.2d at 705.  <u>See</u> <u>also</u>, <u>Baltimore Luggage Co. v. Samsonite Corp</u>., 727 F.Supp. 202 (D. Md. 1989) (no case or controversy where declaratory judgment plaintiff ceased importing disputed product).

For all these reasons, OSA fails to establish either of the necessary elements to bring its declaratory judgment claim. Therefore, such claim must be rejected as a matter of law.

**F.    THE USPTO HAS ORIGINAL JURISDICTION OVER REGISTRATION OF MARKS; THERE IS NO STATUTORY BASIS FOR THE COURT TO INTERCEDE IN THE REGISTRATION PROCESS**

Even if the Court concludes that an Article III "case or controversy" exists for OSA's declaratory judgment counterclaim, this Court should not in the particular circumstances presented in this case, adjudicate International Brands' right to register the "Clubhouse" mark prior to a decision by the USPTO. Instead, the parties should exhaust their administrative remedies concerning that issue in proceedings currently pending before the USPTO.

International Brands and OSA have each submitted to the USPTO an application to register "Clubhouse" as a trademark for Scotch whisky. The International Brands Application will be published as soon as the USPTO lifts its suspension -- a purely ministerial act. (Robin Aff., Par. 8). At that point, OSA will have the opportunity to initiate an <u>inter partes</u> opposition proceeding before the Trademark Trial and Appeal Board ("TTAB") of the USPTO to challenge International Brands' right to register the "Clubhouse" mark. 15 U.S.C. § 1063. The TTAB has full authority to decide the issue of whether International Brands is entitled to register the "Clubhouse" mark, and to consider the disputed claims of ownership asserted by OSA. 15 U.S.C. § 1067. The TTAB regularly decides such issues. <u>See generally</u>, <u>McCarthy</u>

on Trademarks and Unfair Competition, (4th Ed.) Vol. 2, § 16:48
and cases cited therein.  If either party is disappointed by the
TTAB's decision, that party may either appeal the decision to the
Court of Appeals for the Federal Circuit, 15 U.S.C. § 1071(a), or
bring a civil action in a Federal District Court, 15 U.S.C.
§ 1071(b).

Defendant's effort to have the Court intercede at this point
in the trademark registration process is inconsistent with the
regulatory scheme created by Congress.  Congress has granted
original jurisdiction over trademark applications to the USPTO.
15 U.S.C. § 1051, et seq.  While a court may in some cases have
authority to order or deny a registration, such authority is
limited to cases "involving a registered mark."  15 U.S.C.
§ 1119.  Jeno's Inc., v. Commissioner of Patents and Trademarks,
498 F.Supp. 472, 477-478 (D. Minn. 1980) and cases cited therein
(unless the disputed mark is itself already registered, "the
Court may decide the registrability of a mark only where another
registered mark is somehow involved in the action").  See
generally, McCarthy on Trademarks and Unfair Competition, (4th
Ed.) Vol. 5, § 30:113.  Since neither party holds any U.S.
registration for the "Clubhouse" mark (or for any other mark
related to this action), determination of the issue of
registrability -- which is the only genuine issue between the
parties regarding the "Clubhouse" mark -- rests with the USPTO.

Accordingly, the Court should dismiss OSA's Sixth Count, and
allow the pending proceedings before the USPTO to proceed.

## Conclusion

For the reasons set forth above, summary judgment should be entered in favor of International Brands on the Additional Counterclaims.

                                    THE PLAINTIFFS,
                                    INTERNATIONAL BRANDS USA, INC.
                                    AND INTERBRANDS, INC.

                                    By  /s/  Marc J. Kurzman
                                       Marc J. Kurzman
                                       Federal Bar No. ct01545
                                       Dorit S. Heimer
                                       Federal Bar No. ct01219
                                       LEVETT ROCKWOOD P.C.
                                       33 Riverside Avenue
                                       Post Office Box 5116
                                       Westport, Connecticut 06881
                                       Telephone: (203) 222-0885
                                       Facsimile: (203) 226-8025

## <u>CERTIFICATION</u>

This is to certify that a true and correct copy of the foregoing was mailed, via first-class mail, postage pre-paid on this 30th day of October 2003 to:

Michael Feldman
Feldman & Hickey, LLC
10 Waterside Drive, Suite 303
Farmington, CT  06032


                                    /s/  Marc J. Kurzman
                                  Marc J. Kurzman


73547/ver3

## TABLE OF AUTHORITIES

Page

***Cases***

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 81 L.Ed. 617, 57 S.
Ct. 461 (1937) ........................................................... 22

Anderson v. Liberty Lobby, Inc., 477 U.S. 242; 106 S. Ct. 2505,
2508 (1986) ............................................................. 10

Arrow United Industries v. Hughes Richards, Inc., 678 F.2d 410 (2d
Cir. 1982) .............................................................. 17

Baltimore Luggage Co. v. Samsonite Corp., 727 F.Supp. 202 (D. Md.
1989) ................................................................... 24

California Motor Transport Co. v. Trucking Unlimited, 404 U.S.
508; 92 S. Ct. 609 (1972) ............................................... 12

Celotex Corp. v. Catrett, 477 U.S. 317; 106 S. Ct. 2548 (1986)
........................................................................ 10

City of Columbia v. Omni Outdoor Advertising, 499 U.S. 365; 111
S. Ct. 1344 (1991) .................................................. 14, 16

Eastern Railroad Presidents Conference v. Noerr Motor Freight,
Inc., 365 U.S. 127; 81 S. Ct. 523 (1961) ................................ 12

GMA Accessories, Inc. v. Idea Nuova, Inc., 157 F.Supp.2d. 234
(S.D.N.Y. 2000) .................................................... 22, 23

Hartford Life Ins. Co. v. Variable Annuity Life Ins. Co., 964
F.Supp. 624 (D.Conn. 1997) ......................................... 12, 14

Jeno's Inc., v. Commissioner of Patents and Trademarks, 498
F.Supp. 472 (D. Minn. 1980) ............................................. 26

Joint Stock Society v. UDV North America, Inc., 266 F.3d 164 (3d.
Cir. 2001) ......................................................... 17, 24

Joint Stock Society v. UDV North America, Inc., 53 F.Supp.2d 692
(D. Del. 1999), aff'd on other grounds, 266 F.3d 164 (3d Cir.
2001) ................................................................... 22

Kenney v. Scripps Howard Broad. Co., 259 F.3d 922 (8th Cir. 2001)
........................................................................ 10

La Societe Anonyme Des Parfums Le Galion v. Jean Patou, Inc., 495
F.2d 1265 (2d. Cir. 1974) ............................................... 17

Lang v. Pacific Marine & Supply Co., 895 F.2d 761 (Fed. Cir.
    1990) ..................................................... 22

Licata & Co. v. Goldberg, 812 F.Supp. 403 (S.D.N.Y. 1993)...... 17

Manufacturers Technologies, Inc. v. CAMS, Inc., 706 F.Supp. 984,
    1003 (D. Conn. 1989) ....................................... 17

Nissan Motor Co., Ltd., et al. v. Nissan Computer Corporation,
    2002 U.S. Dist. LEXIS 6365 (C.D. Cal. 2002) ................ 11

Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp., 80
    F.Supp.2d 815, (N.D. Ill. 1999) ........................ 22, 24

Professional Real Estate Investors Inc. v. Columbia Pictures
    Industries, 508 U.S. 49; 113 S. Ct. 1920 (1993) ........ 14, 15

Santana Products v. Bobrick Washroom Equipment, Inc., 249
    F.Supp.2d 463 (M.D. Pa. 2003) .............................. 13

Starter Corp. v. Converse, Inc., 84 F.3d 592 (2d Cir. 1996)... 22

Suburban Restoration Co., Inc. v. ACMAT Corp., 700 F.2d 98 (2d
    Cir. 1983) ................................................. 12

The Dow Chemical Co. v. Exxon Corp., 30 F.Supp.2d. 673, (1998)
    ........................................................... 12

United Mine Workers v. Pennington, 381 U.S. 657; 85 S. Ct. 1585
    (1965) ..................................................... 12

Windsurfing International, Inc. v. AMF Inc., 828 F.2d 755 (Fed.
    Cir. 1987) ............................................. 22, 24

Zeller v. Consolini, 59 Conn. App. 545 (2000)................. 12

**Statutes**

15 U.S.C. § 1051........................................... 26

15 U.S.C. § 1063........................................... 25

15 U.S.C. § 1067........................................... 26

15 U.S.C. § 1071(a)........................................ 26

15 U.S.C. § 1071(b)........................................ 26

15 U.S.C. § 1119........................................... 26

15 U.S.C. § 1125(a)........................................ 16

28 U.S.C. § 2201........................................... 22

Conn. Gen. Stat. § 42-110a(4) ................................. 18

**Rules**

F.R. Civ. P. 56(b)........................................... 9

F.R. Civ. P. 56(c)........................................... 9

**Treatises**

Charles E. McKinney, George F. Long III, <u>Federal Unfair
    Competition: Lanham Act</u> (2000) .............................. 17

<u>McCarthy on Trademarks and Unfair Competition</u>............ 15, 26