UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------x

INTERNATIONAL BRANDS USA, INC.
and INTERBRANDS, INC.

    Plaintiffs,

V

                                   CIVIL ACTION NO.
                                   302CV333 (MRK)

OLD ST. ANDREWS LIMITED

    Defendant.                      April 30, 2004

---------------------------------------------x

**AFFIDAVIT OF PLAINTIFF'S EXPERT HAROLD GORMAN**

1. I am over the age of eighteen and believe in the obligations of an oath.

2. I am the Senior Vice President and General Counsel of Allied Domecq North America Corp. ("Allied Domecq"), one of the beverage industry's leading importers and distributors of distilled spirits, including the following brands: Kahlua, Beefeater Gin, Stolichnaya Vodka, Malibu Rum, Canadian Club and Maker's Mark Bourbon. I have served in that capacity since January 1999.

3. I have been professionally engaged in the distilled spirits industry for 35 years and am familiar with the custom and practices in the distilled spirits industry for creating, documenting and terminating exclusive distributorship agreements.

4. Prior to joining Allied Domecq, I served as counsel and as a corporate officer for other companies within the distilled spirits industry, IDV North America, Inc., The Paddington

Corporation and Heublein Inc. Each of those companies is engaged in the manufacture, importation and distribution of distilled spirits.

5. I am familiar with the August 2, 1989 writing signed by Robert F. Haswell ("August 2, 1989 Letter"), having been consulted in the preparation of that document in 1989 for the purpose of memorializing the exclusive distributorship arrangement between Interbrands Inc. and Old St. Andrews. Additionally, I have reviewed the November 21, 2001 termination letter signed by Julian Haswell ("Termination Letter").

6. Based on my experience and knowledge of the distilled spirits industry and my review of the documents in this matter, I conclude:

    a. The August 2, 1989 writing signed by Robert F. Haswell was consistent with the recognized custom and practice then prevalent in the United States distilled spirits industry for documenting an exclusive distributorship relationship between a foreign manufacturer/bottler of distilled spirits and a U.S. importer of distilled spirits.

    b. Under the recognized custom and practice prevalent in the United States distilled spirits industry, absent express agreement to the contrary, an exclusive distributorship agreement can only be terminated by the manufacturer/bottler for "good cause." "Good cause" would be limited to willful conduct such as fraud or criminal activity, other violation of law, false reporting, loss of importer's permit or unjustified failure to purchase product.

    c. As a corollary to the above, under the recognized custom and practice prevalent in the United States distilled spirits industry, an importer of distilled spirits who invests its own funds in developing a brand must be afforded, by the owner of the brand, adequate opportunity to recover its investment.

d. That defendant Old St. Andrews' termination of International Brands' exclusive distribution rights pursuant to its letter of 21 November 2001 did not comport with the recognized custom and practice prevalent in the United States distilled spirits industry in terms of the adequacy of notice and compliance with "good cause" requirement.

7. The basis of the above statement is my experience as counsel for importers/distributors in the distilled spirits industry which experience includes negotiating, compliance monitoring with, and dealing with the termination of exclusive distributorship agreements.

8. In the 1970's and 1980's the use of appointment letters, such as the August 2 Letter, to document exclusive distributorship relationships between small companies was quite common. Although this practice has changed over the last few years as the companies within the industry have consolidated and legal formalities including extensive written agreements have become more common, the custom and practice of the industry today continue to honor the older agreements and the understandings associated with them.

9. As a matter of industry custom and practice prevalent at that time, the August 2, 1989 Letter established an exclusive distributorship relationship between International Brands and Old St. Andrews that could only be terminated without compensation for good cause.

10. Moreover, as a matter of industry custom and practice, an importer/distributor who invests its own funds to market or promote the manufacturer's brand must, absent good cause for termination, be given an opportunity to recoup its investment.

11. If an exclusive distributor is terminated without cause, recovery of its investment in the manufacturer/supplier's brand, and/or its anticipated lost profit, is considered the appropriate standard of compensation.

12. The November 12, 2001 Termination Letter does not comport with the recognized custom and practices of the distilled spirits industry. The purported reasons for termination do not rise to the level of good cause. "Disappointing sales," in and of itself, has never been sufficient in the industry to constitute good cause for termination.

_____
Harold Gorman

Subscribed and sworn to before me on this 30th day of April, 2004.

_____
Notary Public/
My Commission Expires
Commissioner of the Superior Court

**KATHLEEN OTIS**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES OCT. 31, 2006