UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------x

INTERNATIONAL BRANDS USA, INC. :
and INTERBRANDS, INC. :
                                                  :
    Plaintiffs, :
                                                  :
V :
                                                  : CIVIL ACTION NO.
                                                 : 302CV333 (MRK)

OLD ST. ANDREWS LIMITED :

    Defendant. : April 22, 2004

------------------------------------------------x

**AFFIDAVIT OF PLAINTIFF'S EXPERT ANDREW HILLMAN**

    1.  I am over the age of eighteen and believe in the obligations of an oath.

    2.  For roughly thirty (30) years, I have worked in the distilled spirits industry, holding positions with companies engaged in the manufacture, importation and wholesale sale of distilled spirits.

    3.  I have extensive experience with exclusive distributorship relationships and agreements between foreign manufacturer/suppliers and U.S. importer/distributors of distilled spirits including agreements concerning the importation of scotch whisky from the United Kingdom into the United States. I have worked for both manufacturers/suppliers and importers/ distributors in the negotiation and implementation of exclusive distributorship agreements. Such

agreements typically grant an importer/distributor the exclusive right to import and distribute a brand or brands of distilled spirits in a designated market for either a perpetual or fixed term.

4. I have negotiated and implemented such agreements on both the manufacturer/supplier side, (James Buchanan & Company, Ltd.[1] And United Distillers group - both British companies) and importer/distributor side (Newgate Importers, Martini & Rossi group, Bacardi, USA) of the industry. A copy of my curriculum vitae is attached. This required that I negotiate many distributorship termination agreements with local importers. In that capacity I became quite familiar with the manner in which exclusive distributorship relationships are documented and the industry customs and practices with regard to termination of such relationships.

5. Through my experiences I learned that the distilled spirits industry has historically eschewed formal contracts, relying instead on confirming letters (such as the August 2nd Letter) and, not infrequently, on oral agreements. Although this practice has changed over the last few years as lawyer prepared contracts and legal formalities have become more common, the informal way of conducting business certainly prevailed in the 1980's, particularly among the smaller companies.

6. I have reviewed the August 2, 1989 writing signed by Robert F. Haswell ("August 2, 1989 Letter") and the November 21, 2001 termination letter signed by Julian Haswell ("Termination Letter") to address the issue of how these writings comport with industry custom and practices.

---

[1] James Buchanan & Co. was the manufacturer of Black & White Scotch Whisky.

7. I have also been advised that between August 1999 and November 2001 International Brands spent in excess of $1 million in advertising and promoting Old St. Andrews' "Clubhouse" brand of scotch whisky and that Old St. Andrews has not reimbursed or compensated International Brands for these expenditures.

8. Based on my experience in the distilled spirits importation industry, my review of the above letters and the representation of the above marketing expenditures by International Brands, I have concluded:

    a. The August 2, 1989 Letter was recognized as a common custom and practice in the United States and United Kingdom distilled spirits industry at that time for creating an exclusive distributorship relationship between a foreign manufacturer/supplier of distilled spirits and a U.S. importer/distributor.

    b. Under recognized custom and practice prevalent in the United States distilled spirits industry, a manufacturer providing such a writing and an importer/distributor receiving such a writing, would regard themselves as having created an exclusive distributorship relationship in perpetuity, referred to in the industry as an "evergreen" relationship.

    c. Under the recognized custom and practice in the distilled spirits industry still in existence as of the date of the Termination Letter, unilateral termination of an "evergreen" exclusive distributorship relationship by the manufacturer/supplier requires, absent extraordinary circumstances, that the manufacturer/supplier pay the importer/distributor just compensation.

    d. That defendant Old St. Andrews' termination of International Brands' exclusive distribution rights pursuant to the Termination Letter did not comport with the recognized custom and practice prevalent in the United States distilled spirits industry.

e. As a matter of industry custom and practice prevalent at that time, the August 2, 1989 Letter established an "evergreen" relationship between International Brands and Old St. Andrews, meaning that the manufacturer/supplier (Old St. Andrews) and importer/distributor (International Brands) were to conduct business in perpetuity. Implicit in that relationship is the obligation of both parties to work together to promote the success of the brand (akin to a partnership). Because the importer/distributor in such a relationship will typically be making a financial investment in the success of the manufacturer/suppliers brand, as a matter of industry custom practice, absence extraordinary circumstances (i.e., loss of license, fraud, etc.), such a relationship could not be unilaterally terminated by the manufacturer/supplier without sufficient notice to and the payments of just compensation to the importer/distributor. That remains the case today.

f. In my experience "just compensation" is a function of a number of factors including the importer/distributor's investment in the brand and/or anticipated profits as well as the duration of the relationship. Here International Brand's significant investment in Old St. Andrew's "Clubhouse" brand over a twelve year period would as a matter of industry custom and practice require that Old St. Andrews pay substantial compensation to International Brands in connection with the termination of its exclusive distribution rights.

g. The November 21, 2001 Termination letter does not comport with the recognized industry custom and practices because it does not state grounds for the unilateral termination of an exclusive relationship without just compensation recognized in the industry. I am not aware of any other case in our industry where a manufacturer/supplier has terminated an evergreen exclusive distributorship agreement in this fashion.

4

                                          /s/ Andrew Hillman
                                                Andrew Hillman

Subscribed and sworn to before me on this ____ day of April, 2004.


                                          /s/ Notary Public
                                          Notary Public
                                          My Commission Expires
                                          Commissioner of the Superior Court