UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| INTERNATIONAL BRANDS USA, INC. and INTERBRANDS, INC., | : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 3:02CV333(MRK) |
| v. | : : | |
| OLD ST. ANDREWS LIMITED, | : : | |
| Defendant. | : : | |

**RULING ON MOTION FOR DEFAULT JUDGMENT**

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs International Brands USA, Inc. and Interbrands, Inc. (collectively, "International Brands") move for entry of a default judgment [doc. # 76] against Defendant Old St. Andrews Limited ("OSA"). For the reasons set forth below, the Court GRANTS in part the Plaintiffs' Application for Judgment and Request for Expedited Consideration [doc. #76].

**I. Procedural History**

International Brands imports and distributes alcoholic beverages in the United States. OSA produced alcoholic beverages, including Scotch whisky products bearing the name "Old St. Andrews." On February 26, 2002, International Brands filed an eight count complaint [doc. # 1] against OSA. International Brands' principal claim was that OSA had improperly, unfairly, and unlawfully terminated the parties' exclusive distributorship agreement, under which International Brands held the exclusive right to distribute OSA products in the United States, including a product bearing the name Old St. Andrews Clubhouse Scotch Whisky. For the wrongful

termination of its distributorship agreement, International Brands asserted claims for breach of contract, breach of the duty of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA"). International Brands also asserted claims against OSA for failure to reimburse International Brands for certain defective products and for failure to repay monies advanced to OSA by International Brands.

OSA answered the complaint and asserted special defenses and counterclaims [doc. #11]. On May 8, 2002, the Court issued a case management plan by margin endorsement [doc. #13], and the parties proceeded with discovery. In March 2003, OSA moved to amend its counterclaims [doc. # 21] to add counts alleging violations of state and federal law in connection with International Brands' alleged efforts to register with the United States Patent and Trademark Office the name "Clubhouse" in connection with Scotch whisky. The Court granted OSA's motion to amend its counterclaims on April 11, 2003 and International Brands thereafter filed an answer and special defenses [doc. # 31] directed to the additional counterclaims. Discovery, including discovery on the additional counterclaims, continued in accordance with a scheduling order set on April 16, 2003 [doc. #27].

On November 3, 2003, International Brands filed a motion for summary judgment [doc. #48] directed to OSA's counterclaims alleging trademark infringement. However, following a telephonic conference with the Court on December 2, 2003, the parties agreed that the Court should deny the motion for summary judgment without prejudice and without considering the merits of the motion [doc. #54] since a court trial of all the claims was scheduled to commence on April 19, 2004. However, on March 5, 2004, OSA's counsel informed the Court by telephone that OSA had commenced voluntary liquidation proceedings in the United Kingdom. On March

8, 2004, OSA's counsel, Michael Feldman and Kristen Schultze Greene, filed a motion to withdraw their appearances [doc. # 60] as a result of conversations with both OSA's principal and the putative "liquidator" of OSA, who indicated that OSA would not participate further in this action.  The Court took the motion to withdraw under advisement and during a telephonic conference with counsel on March 8, 2004 to address the implications of the liquidation proceedings for this case, the Court informed counsel for both International Brands and OSA that if OSA did not retain replacement counsel by April 12, 2004, the Court would grant the motion to withdraw and if OSA did not appear by counsel in this action, International Brands would be free to move for entry of default and default judgment.

On March 17, 2004, OSA informed the Court [doc. #62] that, among other things: 1) the liquidator had requested that any further proceedings in this matter, including counsel's motion to withdraw, be stayed at least until the Creditors Meeting scheduled for March 26, 2004; 2) the liquidator had instructed Mr. Feldman and Ms. Greene not to take further action in connection with the matter except to relay the liquidator's request for a stay; and 3) the liquidator and Julian Haswell, OSA's principal, had been fully informed of the likely consequences of the granting of counsel's motion to withdraw and OSA's failure to retain counsel to defend the company in this action.  Specifically, OSA was informed of the strong likelihood that a default judgment in an amount of $1.5 million or more would enter against OSA and that its counterclaims would be dismissed if OSA declined to participate in this action by retaining counsel to appear on OSA';s behalf.

After conferring with counsel for the parties on numerous occasions in the ensuing weeks, including on April 1, 2004, the Court on April 2, 2004 entered an order [doc. # 69]

granting Mr. Feldman and Ms. Greene's motion to withdraw their appearances, which had been supplemented by additional affidavits and supporting papers [docs. ## 67, 68]. The Court further ordered that International Brands would be free to move for entry of default and for default judgment if replacement counsel did not appear on OSA's behalf by April 12, 2004. At the Court's behest, Mr. Feldman was required to serve a copy of the Court's Order [doc. #69] on Julian Haswell, the managing director of OSA, and Mark Goldstein, the liquidator, and Mr. Feldman filed a notice with the Court attesting to service of the Court's Order on these individuals. *See* Notice of Service [doc. #73].

To date, no replacement counsel has appeared for OSA, and, as OSA had been informed by Mr. Feldman and the Court, OSA, as a company, could not appear *pro se* and has not sought to do so. On May 10, 2004, International Brands filed an application for entry of default for failure to appear and defend [doc. # 74], which was served on the principal of OSA and the liquidator. The Clerk entered a default against OSA on May 11, 2004 [doc. # 75]. On May 13, 2004, International Brands filed an Application for Judgment and Request for Expedited Consideration [doc. #76], which also was served, along with the supporting documentation, on OSA's principal and liquidator. *See* Certification, *id.* at 7.

In support of its request for entry of default judgment, International Brands submitted extensive documentation, including several affidavits, deposition transcripts, and numerous exhibits pertaining to both the merits of its claims as well as the damages it suffered as a result of OSA's conduct. *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law [doc. #77], Affidavit of Plaintiff's Expert Harold Gorman [doc. #78], Affidavit of Plaintiff's Expert Andrew Hillman [doc. #79], Affidavit of Rolf Andersen [doc. #80], Affidavit of Matt Klim [doc. #81],

Affidavit of Marc J. Kurzman Regarding Deposition Transcripts [doc. #82], and Affidavit of Marc J. Kurzman Re: Attorneys' Fees [doc. #83]. Having previously entered a default against OSA, the issue currently before the Court is the amount of damages to be awarded International Brands on its claims.

## II. Findings of Fact

Because of the default entered against OSA, the Court accepts as true all of the factual allegations of the complaint, except those relating to damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *see* 10A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE & PROCEDURE § 2688, at 58-59 (3d ed. 1998) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). In addition, International Brands submitted extensive documentary evidence and affidavits in support of their motion for default judgment. The Court was impressed by both the detail and documentation that International Brands submitted in support of its claim, and based upon those affidavits and documentation, as well as the well pleaded allegations of the Complaint, the Court makes the following findings of fact.

International Brands USA, Inc. and Interbrands, Inc. were at all relevant times Delaware corporations operating out of Farmington, Connecticut engaged in the importation and distribution of alcoholic beverages in the United States. At all relevant times, OSA was a corporation incorporated under the laws of the United Kingdom, and produced, through third party distillers and bottlers, alcoholic beverages, including Scotch whisky products bearing the name "Old St. Andrews."

In August of 1989, Robert Haswell, OSA's Chairman and majority shareholder, and Rolf

Andersen, the President of Interbrands, Inc., reached an agreement whereby Interbrands would develop a market in the United States for products manufactured by OSA. The parties agreed that Interbrands would be OSA's exclusive United States distributor and would be solely responsible for developing a market in the United States for products produced by OSA. The exclusive distributorship agreement was memorialized in a letter of appointment dated August 2, 1989 and executed by Mr. Haswell. The parties agreed that Interbrands would remain OSA's exclusive U.S. distributor so long as Interbrands met its obligations to OSA in terms of developing a market for products by OSA and purchasing sufficient volume of such products. The agreement was consistent with prevailing industry custom and practice, under which producers/suppliers of Scotch whisky products gave their importers/distributors exclusive distributorships that could not be terminated without compensation unless the producer/supplier had good cause for termination, meaning willful misconduct, false reporting, loss of importer's permit, or unjustified failure to purchase product.

For the next 12 years, until 1994, Interbrands, at its own expense, engaged in extensive sales, distribution, and marketing efforts to develop a U.S. distribution network for OSA products, including aggressively promoting OSA products, maintaining more than adequate warehouse facilities, and purchasing on an ongoing basis sufficient volumes of OSA products to meet market demand.

In 1994, Mr. Andersen created a new company, International Brands USA, Inc. to carry on the business of Interbrands. With OSA's knowledge and consent, Interbrands assigned its rights and obligations under the exclusive distributorship agreement to International Brands USA, Inc. OSA thereafter dealt with International Brands USA, Inc. as its exclusive United

States distributor. International Brands assumed full responsibility for continuing the development of the United States market for OSA products, and at substantial time and cost and with OSA's full knowledge, International Brands worked to continue to develop the U.S. market for OSA. International Brands was apparently quite successful in building OSA's distribution in the United States, as sales of OSA products grew from 1,700 cases in 1994 to over 10,000 cases by 1998.

Throughout the period International Brands was OSA's exclusive distributor, International Brands made extensive investments of its own funds on behalf of OSA and with OSA's full knowledge and consent. For example, at its own expense, International Brands engaged Matt Klim, a highly regarded marketing expert, to redesign the bottles of certain OSA products and to create brochures, advertisements, and promotional materials for OSA products. Affidavits and exhibits submitted by Mr. Klim and Mr. Andersen describe in detail the extent and costs of the International Brands' efforts on OSA's behalf. *See generally*, Affidavit of Matt Klim [doc. #81]; *see also* Affidavit of Rolf Andersen [doc. #80], at 8-10. In the period 1999-2001 International Brands spent over $1.4 million promoting and marketing OSA's products. During the same period, however, International Brands realized profits on sales of OSA products of only $154,412. International Brands invested these sums in reliance on OSA's promise that International Brands would remain OSA's exclusive U.S. distributor, and as a consequence, International Brands expected that it would be able to recoup its investments over time.

In August 1999, Mr. Andersen advised Mr. Haswell that the United States government inspectors had determined that the labels on the 50ml white golf ball shaped bottles of Old St. Andrews "Classic" failed to describe the product as Scotch whisky, and thereby failed to conform

7

to U.S. law. Mr. Haswell agreed the defectively labeled product could be returned to OSA for credit. International Brands secured BATF permission to liquidate its inventory of 50ml Classic until January 1, 2000, later extended to March 30, 2000. With respect to the 50ml Classic already in the hands of wholesalers, the State of Virginia required International Brands either to recover the product from roughly 180 state liquor stores or to issue a "depletion allowance" so that the State could accelerate the sale of the product. After discussions between Mr. Haswell, Mr. Andersen, and Julian Haswell – the son of Robert Haswell and eventual principal of OSA – the Haswells agreed that OSA would credit International Brands for the amount of any depletion allowance issued by International Brands to the State of Virginia. Accordingly, International Brands elected to have the 50ml Classic liquidated by the State of Virginia rather than recover the product from 180 state liquor stores for return to OSA for full credit.

In April 2000, OSA asked International Brands to make arrangements for the return of the mislabeled 50ml Classic, which totaled 212 cases. In June 2000, International Brands advised OSA that it would be returning 212 cases of mislabeled Classic. OSA approved the shipping costs for the return and accepted the return of the 212 cases. On July 15, 2000, International Brands issued OSA two credit invoices, Invoices 715 and 716, for reimbursement of the 212 cases of 50ml Classic returned to OSA and for reimbursement for the cases of 50 ml Classic sold pursuant to the depletion allowances permitted by the State of Virginia or returned from Virginia distributors. To date, OSA has refused to pay the Invoices.

Mr. Haswell died in August 2000. Julian Haswell purchased OSA in or about November 2001 from his father's estate and he assumed the duties of OSA's "Managing Director." In early 2001, Julian Haswell proposed to Mr. Andersen a production schedule and pricing for a new

750ml Clubhouse product. On January 26, 2001, International Brands submitted a formal purchase order for 4,650 cases of the new 750ml Clubhouse product at a price of 18 pounds sterling per case for each of the 4,650 cases. OSA accepted International Brands' purchase order and on February 2, 2001, OSA indicated that production was about to begin.

On February 26, 2001, Julian Haswsell asked International Brands to wire to OSA's bank 26,045 pounds sterling to "help pay the cost of the bulk whisky I have purchased for your order of 4,650 cases which is now becoming due for payment." International Brands agreed to advance these funds to OSA, which were to be credited against the cost of the 4,650 order. On March 9, 2001, International Brands wired to OSA's bank $40,549.01 representing the bulk whisky advance, receipt of which was acknowledged by OSA. The first 1,200 cases of the 4,650 Case Order were shipped in April 2001. International Brands applied the invoiced cost of that shipment (23,600 pounds) to the balance due from OSA for defective products and the bulk whisky advance.

On June 5, 2001, Julian Haswell requested payment for 783 additional cases of the 750ml Clubhouse that were purportedly ready for shipment. By letter dated June 8, 2001, Mr. Andersen reminded Julian Haswell that International Brands already had a credit balance in its favor of 55,302 pounds sterling for (1) defective goods (including goods that had been returned to OSA at OSA's request) and (2) the bulk whisky advance. That credit advance was sufficient to cover the cost of the 1,200 cases that had been shipped plus an additional 783 cases.

On June 22, 2001, International Brands requested by fax that in addition to the 783 cases of 750ml Clubhouse that had purportedly been produced, OSA produce an additional 1,617 cases so that a 2,000 case container of 750ml Clubhouse could be loaded and shipped to International

9

Brands. However, Julian Haswell responded by fax on June 25, 2001 that OSA would not produce any more cases of 750ml Clubhouse until it received from International Brands payment for the 783 cases it was holding. For his part, Mr. Andersen insisted that OSA apply the credits due International Brands to the order.

The parties made an attempt to resolve the outstanding payment issues and secure delivery of the balance of the 4,650 Case Order, but those efforts were ultimately unsuccessful. OSA refused to ship the balance of the 4,650 Case Order unless International Brands paid requested charges, and International Brands objected to OSA's refusal to ship and insisted that International Brands receive the credits it was due. On November 21, 2001, Julian Haswell advised Mr. Andersen that "with immediate effect, Old St. Andrews will no longer be supplying their products to International Brands, Inc. as a customer." This lawsuit followed.

### III. Conclusions of Law

The determination of whether to grant a motion for default judgment lies within the sound discretion of the district court. *See Shah v. N.Y. Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999). "[W]here a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party." *GE Group Life Assur. Co. v. Ruzynski*, No. 3:03CV1647, 2004 WL 243346, at *1, (D. Conn. Feb. 9, 2004) (quoting *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir.1984)). In this case, OSA was informed about the likely consequences of failure to retain replacement counsel and to participate in this action. OSA's failure to respond despite its knowledge of the default entry and its potential consequences, as well as the extensive documentation that International Brands has submitted in support of its claims, justifies an entry of a default judgment against OSA. In its application, International Brands seeks compensatory

damages for OSA's breach of the distributorship agreement (Count One), breach of the covenant of good faith and fair dealing (Count Two), sale of defective goods (Count Six), breach of credit agreement (Count Seven), and violation of CUTPA (Count Eight).  The Court will address each count in turn.[1]

In Count One International Brands seeks reliance damages stemming from OSA's unlawful termination of the distributorship agreement equal to the out-of-pocket expenses International Brands incurred in developing, promoting, and advertising "Clubhouse" products during the period 1999-2001, less the profits International Brands earned on the sale of Clubhouse products during the same time period.  Count Two is a cause of action for breach of the duty of good faith and fair dealing, and the damages International Brands seeks for Count Two is the same as for Count One.  On Counts One and Two, International Brands seeks judgment of a total of $1,333,542.00, which is the sum of the expenses International Brands incurred between 1999 and November 2001 for advertising and promoting Clubhouse in preparation for the new Clubhouse 750ml product, totaling $1,487,954.00, minus International Brands' profits on sales during the same period, which was $154,412.89.

Both case law and the affidavits of International Brands' experts regarding the custom and practice in the industry support International Brands' claim for recovery of reliance damages for OSA's breach of the distribution agreement.  *See, e.g., ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 669 (3d Cir. 1998) ("[W]here a court cannot measure lost profits with certainty, contract law protects an injured party's reliance interest by seeking to

---

[1] Since International Brands has decided not to pursue any other counts of its Complaint, the Court deems those counts abandoned.

achieve the position that it would have obtained had the contract never been made, usually through the recovery of expenditures actually made in performance or in anticipation of performance.") (citations omitted); *Nashville Lodging Co. v. Resolution Trust Corp.*, 59 F.3d 236, 246 (D.C. Cir. 1995) ("[W]here the prospective, 'benefit of the bargain' damages prove too difficult or speculative to calculate, courts commonly give the plaintiff damages measured retrospectively, protecting the plaintiff's 'reliance interest' by undoing the harm which his reliance on the defendant's promise has caused him and putting him in as good a position as he was in before the promise was made.") (citations omitted); *see also* Affidavit of Harold Gorman [doc. #78]; Affidavit of Andrew Hillman [doc. #79]. Moreover, the amount sought, $1,333,542.00, is supported by ample documentary evidence. *See* Andersen Affidavit, Ex. ## 33, 34; Ex. ## 30, 30A; *see also* Klim Affidavit, Ex. ## 5, 7; Ex. ## 63, 65. Accordingly, the Court concludes that International Brands is entitled to judgment against OSA on Counts One and Two and is entitled to recover $1,333,542.00 for OSA's breach of contract and breach of good faith and fair dealing as alleged in those counts.

   Next, International Brands seeks $37,903.64 in damages under Count Six based on OSA's failure to reimburse International Brands for defective and unmerchantable goods, including the 50ml Classic inventory. The sum sought is the amount of the credit invoices International Brands rendered to OSA for defective goods. International Brands submitted copies of both invoices, the first in the amount of $28,857.00 for "return of defective labeling on 50ml white gold ball," Andersen Affidavit, Ex. 57; the second in the amount of $9,046.64 in "billing from the State of Virginia for discounting the defective/mislabeled white gold balls." *Id.*, Ex. 58. International Brands has submitted ample proof of the $37,903.64 in damages for defective and

unmerchantable goods.  Consequently, the Court concludes that International Brands is entitled to judgment against OSA on Count Six and is entitled to recover $37,903.64 in damages on that count.

Count Seven contains a request for reimbursement from OSA for monies advanced by International Brands to OSA at OSA's request, purportedly for the purchase of bulk whisky needed to fulfill a 4,650 case order for Old St. Andrews Clubhouse Scotch Whisky.  International Brands seeks $6,801.00 under Count Seven, which it computes by subtracting from the amount of its advance the price for the 1,200 cases of Clubhouse that OSA shipped to International Brands.  *See* October 1, 2001 Correspondence [doc. #80], Ex. 49.  This claim is also supported by affidavits and documentary evidence.  Accordingly, the Court concludes that International Brands is entitled to judgment against OSA on Count Seven and is entitled to recover $6,801.00 on that count.  International Brands is therefore entitled to recover a total of $1,378,246.64 in compensatory damages for the claims set forth in Counts One, Two, Six, and Seven.

Finally, in Count Eight, International Brands seeks to recover under CUTPA for OSA's wrongful termination of International Brands' exclusive distributorship and for OSA's failure to credit International Brands for the advanced payments demanded by OSA or for the defective products.  Compl. ¶ 48.  On its CUTPA claim, International Brands seeks two forms of recovery: its legal fees, and punitive damages as assessed by the Court.

Conn. Gen. Stat. § 42-110g(d) provides that "the court may award, to the plaintiff . . . costs and reasonable attorneys' fees based on work reasonably performed by an attorney and not on the amount of recovery."  Marc J. Kurzman, the lead attorney for International Brands at all relevant times, submitted an extensive affidavit and documentation which establishes

$290,208.42 as the amount of legal fees and expenses that International Brands incurred in this action as a result of OSA's conduct. *See* Kurzman Affidavit Re Attorneys' Fees, Exs. A - C. The fees and expenses requested are reasonable in amount, appropriately documented and were reasonably incurred in support of the diligent work of International Brands' counsel on behalf of his client. Regrettably, however, this Court cannot award International Brands its legal fees under CUTPA because the Court does not believe that there are legally sufficient grounds to impose CUTPA liability in this case.

While it is true that by its default OSA admitted International Brands' well-pleaded allegations of fact, *Au Bon Pain Corp.*, 653 F.2d at 65, this Court may grant International Brands only that relief for which a sufficient basis is asserted in its Complaint. 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 55.12 (3d ed. 2004); *cf. Nishimatsu Construction Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). In Count Eight, the CUTPA claim, International Brands simply incorporates by reference the conduct described in support of its breach of contract claims. Compl. ¶ 48. The Second Circuit has held that "a simple contract breach is not sufficient to establish a violation of CUTPA, particularly where [as here,] the count alleging CUTPA simply incorporates by reference the breach of contract claim and does not set forth how or in what respect the defendant's activities are either immoral, unethical, unscrupulous or offensive to public policy . . ." *Boulevard Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1038-39 (2d Cir. 1995) (citations omitted); *see Loda Agency, Inc. v. Nationwide Ins. Co.*, No. 3:00CV1750, 2000 WL 1849865, at *4 (D. Conn. Oct. 10, 2000) (incorporating by reference the alleged breaches of contract in the complaint without setting forth how such conduct could be characterized as immoral, oppressive, and unscrupulous, was insufficient to find CUTPA

violation). Indeed, the Second Circuit observed, "A rule to the contrary – that a company violates CUTPA whenever it breaks an unprofitable deal – would convert every contract dispute into a CUTPA violation. We cannot assume that the Connecticut legislature, in enacting CUTPA, intended such an extraordinary alteration of the common law." *Boulevard Assocs.*, 72 F.3d at 1039.

International Brands has not alleged any aggravating circumstances or any immoral or oppressive conduct by OSA in this case. To the contrary, it appears to the Court from the allegations of the Complaint and the affidavits as well, that OSA simply tried to walk away from a contract and agreements that it had no right to terminate or ignore. Such conduct surely constitutes a breach of contract, and even breaches the covenant of good faith and fair dealing. But it does not, without significantly more, violate CUTPA. And without a CUTPA violation, this Court has no legal basis on which to award International Brands its legal fees.

For the same reasons, the Court cannot award International Brands punitive damages under CUTPA. Conn. Gen. Stat. §§ 42-110g(a). Therefore, International Brands is not entitled to the legal fees and punitive damages it requested in Count Eight.

### IV. OSA's Counterclaims

In addition to seeking a default judgment on its complaint, International Brands also requests judgment on OSA's counterclaims. The Court has previously granted a default against OSA [doc. #75]. Since OSA has not appeared and prosecuted its counterclaims, International Brands is entitled to a judgment of dismissal on all of OSA's counterclaims.

### V. Conclusion

For the foregoing reasons, the Court GRANTS in part International Brands' Motion [doc.

#76] and directs the Clerk to enter default judgment for International Brands and against OSA on Counts One, Two, Six, and Seven of International Brands' complaint [doc. # 1] in accordance with this Ruling in the total amount of **$1,378,246.64**.  The Court also directs the Clerk to enter a judgment of dismissal against OSA on all of OSA's Counterclaims [doc. ## 11, 38].  There being no further matters remaining for disposition, **the Clerk is directed to close this file.**

                        IT IS SO ORDERED.

            /s/           Mark R. Kravitz
                    United States District Judge

Dated at New Haven, Connecticut: June 15, 2004.